Argued October 23, reversed November 18, 1953

# LEISHMAN *v.* TAYLOR
263 P. 2d 605

*James Arthur Powers,* of Portland, argued the cause for appellant. With him on the brief was Earle P. Skow, of Portland.

*Sam Van Vactor* argued the cause for respondent. On the brief were Brown & Van Vactor, of The Dalles, and T. Lester Johnson, of Wasco.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

TOOZE, J.

This is an action for damages for personal injuries arising out of an automobile accident, brought by Ethel Leishman, as plaintiff, against Ben Taylor, as defendant. The jury returned a verdict in favor of plaintiff in the sum of $15,000 as general damages, and in the further sum of $181.75 as special damages. Judgment was entered accordingly. Defendant appeals.

Plaintiff, a woman approximately 50 years of age and a resident of Woodlawn, California, was injured on July 8, 1949, while riding as a passenger in a Chevrolet sedan automobile being driven by her daughter in a northerly direction on highway 97, a two-lane public highway, in Sherman county, Oregon. The highway is paved with black-top, is approximately 18 feet in width, and marked with a yellow center line.

As the car in which plaintiff was riding approached the town of Kent, it overtook a GMC truck also proceeding in a northerly direction along said highway. This truck was owned by the defendant Henry Ben Taylor, who operates a large ranch about four miles from the town of Antelope, and at the time in question was being operated by defendant's employe, one Tom Huntington, upon the business of defendant. The truck was loaded with hay.

The Chevrolet automobile continued to follow the hay truck through and beyond the town of Kent. After passing through Kent, and after another motor vehicle driven by one Pat Armstrong, of the state of Nebraska, had overtaken and passed both the Chevrolet and the truck, the driver of the Chevrolet, after repeated warnings, drove to the left and attempted to pass. While she was in the act of passing the truck, the accident occurred.

There is a sharp dispute in the testimony as to just what caused the accident and as to whether there was an actual collision between the automobile and truck, but the Chevrolet did leave the highway and rolled over two or three times, as the result of which plaintiff's daughter was killed and plaintiff sustained the personal injuries of which she complains.

For the purposes of this opinion the foregoing statement of facts, although incomplete, is sufficient. The only question presented on this appeal is whether the trial court erred in denying defendant's motion for a mistrial, which motion was based upon the allegedly wrongful injection of the matter of insurance into the case by plaintiff's attorney.

The question arose on the voir dire examination of the jury panel. After three jurors had been examined testing their qualifications and had been passed, plaintiff's attorney proceeded with the examination of the fourth juror, one Medler, a farmer living about nine miles east of Wasco. We now quote from the record:

"Q [BY MR. JOHNSON] What is your occupation?

"A Farmer.

"Q The same type—

"A Strictly farming; no live stock.

"Q How long have you been engaged in that occupation?

"A Oh, for the past five years—four or five years.

"* * * * *

"Q Are you acquainted with the defendant, Mr. Ben Taylor?

"A I know Mr. Taylor, yes.

"Q How well do you know him?

"A Just to know who he is and perhaps say hello.

"Q You have never had any business dealings with him?

"A No, I have not.

"Q You feel that your acquaintance with Mr. Taylor would in any way influence your judgment in this case?

"A No, sir, I do not.

"Q Have you ever been involved in a—you are acquainted with the attorneys in this case—Mr. Powers, the attorney—

"A No, sir, I have never seen him before.

" "* * * * *

"Q Of course, you are acquainted with me. Will you state the nature of your acquaintance with me?

"A I never had any legal business transacted with you, personally, myself; and other than we both are from the same town, that is the extent of our acquaintance.

"Q In other words, our acquaintance has been social.

"A That is correct.

" "* * * * *

"Q Have you ever been involved in an accident or claim for damages for a personal injury or property damage?

"A No, sir.

"Q You never have?

"A No.

"Q Have claims ever been made against you by reason of operating an automobile or truck?

"A No.

" "* * * * *

"Q In this case, Mr. Medler, the defendant is Ben Taylor. The evidence will show that he wasn't operating the truck at that time, that it was being operated by an employee of his. The Court will instruct you relative to the law on principal and

agent, to the effect that the principal is liable for the acts of his agent when the agent or employee is acting within the scope of his employer's business: Would you be willing to follow the instruction of the Court in regard to the liability of the principal for the acts of his employee?

"A  Yes, I would.

"Q  *You probably have some acquaintance with that principal* [sic] *of law, anyway.*

"A  *I believe I do.*

"Q  *You employ help, do you, in your farm operation?*

"A  *Yes, I do.*

"Q  *And you carry insurance to cover those?*
"A  *Yes, I do.*

"Q  *And the reason for that is because of your understanding that you are liable for the acts of the employees?*

"A  *That is the way it was represented to me.*

"MR. POWERS: If it would be possible—to have a recess now, for a minute, please?

"THE COURT: Yes.

" (Recess started at 10:35 a.m., and the following record made in chambers out of the presence of the jury.)

"THE COURT: Read me the last three or four questions.

" (Questions and answers read by the reporter.)

"MR. POWERS: Now, I make—the defendant respectfully moves the Court for an order directing a mistrial because of the injection of insurance, which is highly prejudicial in a matter—in the case. You can't possibly have a fair trial with this insurance now having been injected in to the case.

"*  *  *  *  *

"MR. POWERS: Let me add for my motion, the defendant asks that the jury be discharged; that

the question—or two questions— propounded to the juror, Medler, were prejudicial in nature and would prevent the defendant here from having a fair trial; that the matter is in no way germane to the issue here and the fact that it was voluntarily asked would indicate that it was prejudicial even though the juror had not answered, but the juror had answered and it has now injected the insurnace [sic] in the case. We believe the mistrial should be granted.

"MR. VAN VACTOR: The plaintiff opposes the motion. First, the incident occurred upon the examination of a juror and not during the trial, after the juror had been selected; the rule is more liberal at that time than it might be later on. In the second place, the inquiry was not directed to whether the defendant carried liability insurance, but was an inquiry with respect to this juror. And to the third place, if it warranted a nonsuit—if a mistrial were warranted—it would have to be that there was misconduct of counsel; misconduct of counsel would seem to embrace an evil intent and an attempt to inject something into the case which counsel knew was improper. In this case, there isn't any question but what counsel was wholly— did not intend any wrong-doing whatsoever; was not attempting to indulge in sharp practices. It was an honest inquiry directed for the purpose of determining how far the juror understood the agency relationship. And, in the fourth place, the modern trend of decisions indicates that the carrying of liability insurance is so universal, that it is questionable now days whether minor references to it in a trial, any more, would actually be prejudicial.

"THE COURT: Do you want to say anything further:

"MR. POWERS: Nothing further.

"THE COURT: All right. The motion for mistrial will be denied. *There is absolutely no question in my mind but that the interjection was completely*

*unintentional. I am certain that there was no evil design and there was no deliberate attempt to interject insurance.* All right; that is all.

"MR. POWERS: May we have an exception to the Court's ruling?

"THE COURT: Yes, you may have an exception.

"MR POWERS: You had the feeling, did you not, that if the case goes ahead it could be raised again if necessary, in connection with the motion.

"THE COURT: For a new trial.

"MR. VAN VACTOR: Any disposition to direct the juror to disregard the statement: I take it that counsel has not requested that this be done.

"MR. POWERS: Well, the Court said he wasn't going to, and I made my motion for a mistrial.

"THE COURT: I think as a matter of fact that you would be better off to stand on your mistrial and not to ask for any instructions, you might be waiving your position. I mean, not asking for instructions for them to disregard—you might be waiving your position on a mistrial.

"MR. POWERS: That is right." (Italics ours.)

As noted, plaintiff's attorney contended and the trial court seemed to be of the opinion that a mistrial should not be granted unless the examining attorney was prompted by an evil design. The trial court found that there was no evil design on the part of counsel. The statement of the trial court "that the interjection was completely unintentional * * * there was no deliberate attempt to interject insurance" is in direct conflict with the record. It is perhaps true that counsel did not intend any deliberate wrong-doing; that he was not prompted by an evil design, but that is not the sole test for determining whether a mistrial should be granted.

As the record conclusively discloses, counsel's questions were deliberate and intentional. The question about insurance did not have anything whatever to do with the relationship of master and servant or the liability of a master for the torts of his servant, nor with the issues in the case. It is obvious from the preliminary questions asked the juror that counsel intended thereby to indirectly make a comparison between the juror's situation and that of defendant. The inference which it was intended should be drawn is clearly indicated; that is, "if you, as a farmer-employer, carry insurance to protect you against the tortious acts of your employe, the defendant, who is engaged in a similar business, probably does the same."

Our reports are replete with decisions involving the propriety or impropriety of injecting the matter of insurance into cases such as that now before the court. In many instances the questions and answers relating to insurance were deemed proper; in others, improper. The rules governing the matter have been stated and restated many times and are now firmly established in this state. No useful purpose would be served in again restating them. In many cases the question of insurance arose through pure inadvertence; in others, its presence was developed as an incident to proper direct examination or cross-examination of witnesses upon material issues; in some instances, the injection of insurance into the case was obviously intentional and served no purpose in the litigation. In decisions of this court invloving the latter type of conduct, we have uniformly held that such constituted prejudicial error. As an instance where the matter of insurance arose through pure inadvertence and wholly without the fault of either party to the litigation, see

*Denton v. Arnstein,* 197 Or 28, 250 P2d 407, 420. There the matter arose from the question of a juror, a question propounded after the court had fully instructed the jury upon the conclusion of the trial. Defendant's motion for a mistrial was denied. We said in that case:

"* * * In most, if not all cases, the granting or denying of a motion for mistrial rests largely within the sound discretion of the trial judge. We should not disturb its finding upon such a motion unless we can say affirmatively from the record that there has been an abuse of discretion."

Under the facts in that case and in view of the cautionary instruction given the jury to disregard entirely the matter of insurance, we were not prepared to say that there had been an abuse of discretion on the part of the trial court.

As instances where the inquiry about insurance was deemed proper and where the applicable rules are well stated, see: *Smith v. Pacific Truck Express,* 164 Or 318, 328, 100 P2d 474; *Webb v. Hoover-Guernsey Dairy Co.,* 138 Or 24, 4 P2d 631; *Stone et al. v. Oliver,* 135 Or 4, 5, 294 P 346; *Fletcher v. Saunders,* 132 Or 67, 70, 284 P 276.

■ In denying the motion for a mistrial, as well as in denying defendant's motion for a new trial, the trial court relied upon our decision in *Stone et al. v. Oliver,* supra. In that case the prospective juror being questioned was an insurance agent. An insurance company for which he acted as agent might have had the coverage in that case. If so, that fact would have affected his qualifications to sit as a juror. The question propounded to the juror was not on its face wholly improper, and both defendant's counsel and the court absolved plaintiff's attorney of intentional wrongdoing.

For example, the able attorney for defendant (now an Associate Justice of this Court) said in his brief: "The attorney who asked the questions in this case is a gentleman of long experience and learned in the law. We fully exculpate him of intentionally running afoul of the 'Charybdis of pettifoggery'." Manifestly, the situation prevailing in *Stone et al. v. Oliver* was far different from that in the case at bar. We do not wish to be understood as laying down a rule that in every case where an insurance agent is called into the jury box as a prospective juror, it is proper to inquire about insurance; it is only proper where examining counsel has reasonable grounds to believe that the agent represents the particular insurance company carrying the coverage involved in that litigation, and then the right of inquiry should be sparingly and carefully exercised.

As examples of decisions where we have held that bringing insurance into the case constituted prejudicial and reversible error, see: *Ross v. Willamette Valley Transfer Co.*, 119 Or 395, 402, 248 P 1088; *Cameron v. Pacific Lime & Gypsum Co.*, 73 Or 510, 518, 144 P 446.

▇▇ Although not necessary to a decision in the case, nevertheless, in *Putnam v. Pacific Monthly Co.*, 68 Or 36, 53, 130 P 986, 136 P 835, Mr. Justice BURNETT, in writing the opinion of the court, made the following significant statements:

"The examination of a jury is nothing more nor less than the taking of testimony on the issues to be raised as to his qualifications to sit in the cause on trial. * * * In our judgment the only reasonable principle to be laid down is that in taking testimony on such an issue as on any other the scope of the examination is subject to the discretion of the court. The court should, as near as possible, steer a safe course between the Scylla of a packed

jury on the one hand and the Charybdis of petti-foggery on the other. The plaintiff has the right to inquire about the interest, direct or indirect, of the jurors that may affect their verdict; but he has no right to abuse that privilege or make it a strata-gem by which he can prejudice the jury with ir-relevant matter. Any defendant has a right to a fair trial of the actual issues joined, unbiased by the popular prejudice against foreign insurance corporations needlessly injected into a case, even by indirection, where such concerns are not im-mediately involved. The trial court ought to control the interrogatories so as to exclude the element in question as far as consistent with the administration of exact justice in the case made. If needful to prevent putting the insurance of the defendant into the case unnecessarily, the court would be author-ized to take repressive measures, even to dismissing the jury and continuing the case for a trial *de novo.*"

We approve and adopt what was said by Mr. Justice BURNETT in that case as a correct statement of the ap-plicable rules.

■ The ban against unnecessarily injecting insur-ance into a case of this kind was adopted because presumably it would arouse prejudice in the minds of the jurors and cause them to return such a verdict against a defendant as they might not otherwise have done.

■ In this case there was no reason or excuse what-ever for making inquiry of the juror about insurance. Even the inquiry about the liability of an employer for the tortious acts of his employe was unnecessary, though not improper. Defendant in his answer had admitted the ownership of the truck, and that at the time of the accident the truck was under his manage-ment, operation, and control, by and through his em-

ploye Tom Huntington. He further specifically admitted the allegation of plaintiff's complaint that at the time of the collision Tom Huntington, the driver of the truck, was acting within the course and in the scope of his employment as an employe of defendant. The inquiry about insurance was made in the presence and hearing of all other prospective jurors. The harm was done, and it could not be undone. You cannot unring a bell nor unscramble an egg.

Under the record in this case, the trial court abused its discretion in not granting defendant's motion for a mistrial. To uphold the trial court's action would require us to turn our backs upon a long line of prior decisions of this court and to completely let down the bars insofar as the injection of the matter of insurance into a case is concerned. That we are unwilling to do. The error is prejudicial and reversible.

In his statement of objections to defendant's motion for mistrial quoted supra, able counsel for plaintiff said:

"* * * And, in the fourth place, the modern trend of decisions indicates that the carrying of liability insurance is so universal, that it is questionable now days whether minor references to it in a trial, any more, would actually be prejudicial."

All that may be true, but to adopt counsel's theory in that regard, we would be compelled to disregard entirely the firmly established law of this state. If any relief is to be obtained from the situation that exists, the remedy lies with the legislature and not with this court.

Judgment reversed.