Argued December 7, affirmed December 22, 1971, motion to
assess damages March 1, motion to recall mandate
denied June 22, 1972

STIRLING ET UX, *Respondents, v.* DARI-DELITE,
INC., *Appellant.*

491 P2d 1168
494 P2d 252
498 P2d 753

Jaqua, Wheatley & Gardner, Eugene, filed a brief for appellant.

Robert J. McCrea, Eugene, argued the cause for respondents. On the brief were Gildea, Speer & Allison, Eugene, and Howard E. Speer, Eugene.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an appeal from an order denying a motion to set aside a default judgment.

The complaint in this case, an action for damages for breach of a franchise agreement, was filed on October 8, 1968. On May 5, 1969, no appearance having been made by defendant, plaintiffs moved for an order of default, which was then entered. Defendant then appeared and on May 8, 1969, moved to set aside the order of default, which was then set aside and an answer was filed by defendant.

Meanwhile, on June 17, 1969, plaintiffs moved for an order to require defendant's president to appear for deposition and to bring with him various records.[1] On July 2, 1969, after a hearing on that motion an order was entered, based upon the consent of defendant's attorneys, that defendant's president, Robert Stanslow, would appear for deposition at a time to be agreed upon "between the parties." Apparently, however, that deposition was never taken.

---

[1] Two days later defendant also filed a motion to set aside plaintiffs' motion for a deposition, which was denied. Defendant also filed a motion to quash service of summons and a motion to strike or to make plaintiffs' complaint more definite and certain, which was later stricken, on plaintiffs' motion.

On February 25, 1970, plaintiffs served on defendant's attorneys of record a motion for production of documents and a notice to take the deposition of Mr. Stanslow on March 17, 1970. Apparently, however, Mr. Stanslow again did not appear for deposition.

On April 22, 1970, plaintiffs filed a motion to strike defendant's pleadings for the willful failure of Mr. Stanslow to appear for deposition, with an affidavit setting forth facts in detail in support of that motion. An order and citation were then issued to defendant's attorneys to appear on May 18, 1970, to show cause why defendant's pleadings should not be stricken.

On May 18, 1970, after a hearing attended by attorneys for both parties, an order was entered requiring "the appropriate officer of the defendant corporation who has * * * knowledge * * * of the facts" to appear on June 1, 1970, for deposition and to bring with him various records. In accordance with instructions by the trial judge, service was made of a copy of that order by registered mail on the Corporation Commissioner of Oregon and also upon the defendant corporation at its home office in California, as well as by personal service upon defendant's local attorneys. On May 22, 1970, defendant's attorneys filed a notice of resignation, accompanied by an affidavit stating, among other things, that "defendant has refused to cooperate in the defense, has refused to furnish documents requested or demanded pursuant to Orders to Produce and has refused to appear for scheduled depositions."

On June 1, 1970, the time set for appearance for deposition and for production of records, no one

appeared on behalf of defendant and an order was entered striking defendant's pleadings and adjudging defendant to be in default. On the next day a default judgment was entered against defendant in the sum of $84,700.

No appeal was taken by defendant from that judgment and for over seven months no action whatever was taken by or on behalf of defendant in this case.

Finally, on January 4, 1971, a motion to set aside the default judgment was filed on behalf of defendant by the same attorneys who had previously withdrawn, based upon an unsworn "declaration" by one William J. Philbee (later supplanted by a sworn affidavit) to the effect, among other things, that he was defendant's president; that Mr. Stanslow had not been president since December 1969; that defendant's offices had been "padlocked" by the Internal Revenue Service from March 7, 1970, through July 24, 1970, with the result that until then he was not aware of the court order to appear on June 1, 1970, until that date had "already passed"; that he also did not know for some unspecified time that defendant's attorneys had resigned, but had contacted them "during the first few days of September and have been working on this matter ever since."

A hearing on that motion was then set for March 15, 1971, and further affidavits were also filed in support of and in opposition to defendant's motion. At that time the trial judge denied defendant's motion to set aside the default judgment. Defendant appeals from that order.

Defendant contends on this appeal that "the trial court erred in finding that the defendant will-

fully failed to appear for deposition after being served with proper notice and in failing to find defendant's failure to appear resulted from mistake, inadvertence, surprise, or excusable neglect" and also "abused its discretion in striking defendant's entire answer." In support of these assignments of error defendant's primary contention is that it was not "served with a proper notice" in writing of the deposition, as required by ORS 45.190 and 45.161 before a court can strike the pleadings of a party for willful failure to appear for a deposition.

It is well established, however, that a defendant seeking relief under ORS 18.160 from a default judgment must not only show that the judgment was entered against him through mistake, inadvertence, surprise or excusable neglect, but must also show that he acted with reasonable diligence after knowledge of the default judgment and inexcusable delay will preclude him from relief. *Koukal v. Coy et ux,* 219 Or 414, 418-20, 347 P2d 602 (1959); *Reeder v. Reeder,* 191 Or 598, 601, 232 P2d 78 (1951); and *Steeves v. Steeves,* 139 Or 261, 265, 9 P2d 815 (1932).

■ After examining the record in this case we agree with the trial judge in holding that "based upon the entire record" this defendant failed to establish grounds sufficient to entitle it to relief from the entry of the default judgment. Defendant admitted knowledge of the default judgment on or about July 24, 1970. There is also evidence that defendant's officers had such knowledge at an earlier date and that they had "refused to appear for scheduled depositions." Of more importance, however, is the fact that it filed no motion to set aside the default judgment until January 4, 1971, and failed to show any reasonable excuse

for that long delay. Under all of the facts and circumstances in this case, the trial judge did not abuse the discretion conferred upon him by ORS 18.160.

It thus becomes unnecessary to decide whether or not, prior to the entry of the order striking defendant's answer for failure to appear for the deposition and prior to the entry of the default judgment, defendant corporation was entitled to and was given written notice of the order to appear for the deposition, separate and distinct from the notice served upon its attorneys of record.[2]

It follows that the order of the trial court refusing to set aside the default judgment is affirmed.

---

[2] See Harris v. Harris, 247 Or 479, 430 P2d 993 (1967). See also Colwell v. Chernabaeff, 92 Adv Sh 223, 258 Or 373, 482 P2d 157 (1971). Cf. Rule 37 (d), Federal Rules of Civil Procedure, and 8 Wright and Miller, Federal Practice and Procedure 798-799, 817-820, §§ 2289, 2291 (1970).

ON MOTION TO ASSESS DAMAGES

Gildea, Speer & McGavic, P.C., and Stephen R. Blixseth, Eugene, for the motion.

TONGUE, J.

Upon the affirmance by this court of the order by the trial court refusing to set aside the default judgment in this case plaintiffs have moved for an order assessing damages for the delay resulting from the appeal by defendant. In support of that motion plaintiffs rely upon ORS 19.160, which provides as follows:

> "*Damages upon affirmance of judgment.* Whenever a judgment or decree is affirmed on appeal, and it is for recovery of money, or personal property or the value thereof, the judgment or decree shall be given for 10 percent of the amount thereof, for damages for the delay, unless it appears evident to the appellate court that there was probable cause for taking the appeal."

In past years this court has been reluctant to invoke the provisions of this statute. In this case, how-

ever, it is not only clear that there was no probable cause for the appeal by defendant, but that the appeal was part of a long-continued and calculated scheme by defendant to prevent the enforcement of a valid obligation for which defendant had no proper defense.

■ Therefore, and because of the extreme and aggravated facts of this case, we hold that under the terms of ORS 19.160 plaintiffs are entitled to the entry of judgment for the additional amount of 10 percent of the amount of the original judgment as damages for the delay resulting from this appeal. In so holding, however, we wish to make it clear that we do not criticize in any way the conduct of defendant's attorneys of record, because it is apparent that the defendant failed to cooperate with them.

McALLISTER, J., dissenting.

Since this court has already affirmed a default judgment against defendant for the entire $84,700 prayed for by plaintiffs in their complaint, this is not an appropriate case in which to award plaintiffs further damages pursuant to ORS 19.160. I dissent.

**ON MOTION TO RECALL MANDATE**

368

Kobin & Meyer and Leo Levenson and Charles L. Kobin, Portland, attorneys for United Pacific Insurance Company, for the motion.

Gildea, Speer, & McGavic, P. C., and Howard E. Speer, Eugene, contra.

TONGUE, J.

Following the supplemental decision in this case that under the terms of ORS 19.160 plaintiffs are entitled to the award of an additional amount of 10 per cent of the amount of the original judgment as "damages for the delay" resulting from this appeal, a mandate was issued directing entry of such a judgment not only against the defendant, but also against its

surety, United Pacific Insurance Company. The mandate was issued under the terms of ORS 19.190 (2), which provides:

"If judgment is given against the appellant, it shall be entered against his sureties also, in like manner and with like effect, according to the * * * extent of their undertaking."

United Pacific Insurance Company, as the surety, has filed a motion to recall the mandate and to strike from it the provision authorizing a judgment against it for the 10 per cent award.

In support of that motion United Pacific first calls attention to the fact that the undertaking on appeal in this case was in the form of a cost bond under ORS 19.040 (1)(a), rather than a supersedeas bond under other provisions of ORS 19.040. Thus, it is contended that ORS 19.160 does not authorize an award of such a judgment because under a cost bond plaintiffs were not delayed from attempting to execute under that judgment pending the appeal, as might have been the result of a supersedeas bond, under which plaintiffs would have been delayed from attempting to collect the judgment pending the appeal. As a second contention, it is urged that, in any event, an award of 10 per cent of the original judgment as "damages for the delay" resulting from the appeal is a "penalty" and, as such, cannot be properly assessed against a surety, even if properly assessed against the defendant as its principal.

We do not agree with the contention that the term "damages for the delay" in appeals taken without probable cause, as used in ORS 19.160, must be limited to appeals in which a supersedeas bond has been filed. ORS 19.160, by its express terms, provides for an

award of 10 per cent of the original judgment as "damages for the delay" whenever a judgment for money is affirmed in an appeal taken without probable cause, without regard to whether a cost bond or a supersedeas bond has been filed.[1] ORS 19.040 provides that a condition of both a cost bond and a supersedeas bond is that the surety "will pay all damages."

We have also previously held that the purpose of ORS 19.160 was to impose a penalty to discourage frivolous appeals taken without probable cause for the purpose of delay, as in this case.[2] In addition, and regardless of whether in such an appeal a cost bond has been filed, rather than a supersedeas bond, so as to permit the plaintiff to levy execution under the judgment, pending the appeal, he must nevertheless incur further attorney fees and other expenses and inconveniences during the pendency of the appeal, which may extend for many months.

■ In any event, the legislature, in providing for the imposition of such a penalty, as "damages for delay" on appeals from money judgments taken without probable cause made no distinction dependent upon the nature of the bond filed in such an appeal. It also follows, in our opinion, that the term "damages for delay," as used in ORS 19.160, was not intended to be limited to interest on a money judgment or other

---

[1] ORS 19.160 provides:

"Whenever a judgment or decree is affirmed on appeal, and it is for recovery of money, or personal property or the value thereof, the judgment or decree shall be given for 10 percent of the amount thereof, for damages for the delay, unless it appears evident to the appellate court that there was probable cause for taking the appeal."

[2] Erb v. Shope, 140 Or 253, 256, 12 P2d 308 (1932). See also Haas v. Bates, 150 Or 592, 597, 47 P2d 243 (1935).

measurable damages resulting from the delay of an appeal.

■ For these reasons, we hold that when, under ORS 19.160, an award of 10 per cent of the amount of the original judgment is directed by this court because of a frivolous appeal, such an award is proper regardless of whether, in the course of such an appeal, the defendant has filed a cost bond or a supersedeas bond.

In so holding we recognize that some courts in other jurisdictions have held, under somewhat similar statutes, that the term "damages," as used in such statutes, is not a "penalty," but means actual damage,[9] and that in the absence of a supersedeas bond there can be no actual damage from the filing of a frivolous appeal by a defendant because, in the absence of a supersedeas bond, the plaintiff may levy execution under the judgment despite the pendency of an appeal under a so-called "cost bond."[10]

For reasons previously stated, however, we regard such reasoning to be inconsistent with the express terms of both ORS 19.160 and 19.040, as well as with what we have previously held to be the purpose of ORS 19.160. We thus decline to follow such cases.

As for the liability of the surety in such cases, it is generally held under statutes similar to ORS 19.160 that regardless of whether "damages for the delay" in frivolous appeals is regarded as a "penalty" or as intended to refer to actual damages in the usual sense, upon the assessment of such "damages" judg-

[9] See Sellers v. City of Jackson, 221 Miss 150, 75 So 2d 265 (1954). See also Riley v. Mitchell, 35 NW 472 (1887); Kmetz et al v. DeRonde, 231 NY 255, 131 NE 907 (1921); and Cohen v. Corbett et al, 107 Kan 690, 193 P 336 (1920), holding that "damages" includes "costs."

[10] Phoenix Ins. Co. v. McKernan, 104 Ky 224, 46 SW 698 (1898).

ment may be entered in that amount against both the defendant and his surety, at least where, as in this case, the surety is a compensated surety.⊚

■■ In our judgment, this same result follows under Oregon statutes. This is so because, by the terms of either a cost bond or a supersedeas bond, and as required by ORS 19.040, the surety agrees to pay "all *damages,* costs and disbursements which may be awarded against him [the defendant] on the appeal" and because ORS 19.160 provides that in an appeal taken without probable cause in which there has been a judgment for the recovery of money, judgment "* * * shall be given for 10 per cent of the amount thereof, for *damages* for the delay * * *." ORS 19.040 and 19.160 both originated in Deady's General Laws of Oregon, §§ 528 and 537, and there both use the term "damages." This indicates that the term "damages" was intended to mean the same in both sections.

■ Because the additional award is for damages, which the surety has expressly obligated itself to pay, the additional 10 per cent is payable by the surety. Thus, regardless of whether "damages for delay" may be considered for other purposes to be a "penalty," we think that this legislative disposition is controlling on the question of the liability of the surety for "damages for the delay" in frivolous appeals.

---

⊚ Sellers v. City of Jackson, 221 Miss 150, 75 So 2d 265 (1954); City of Troy v. McLendon, 188 So 2d 281 (Ala 1966). See also Hathaway v. Davis, 33 Cal 161, at 168-169 (1867). The same is true in Kentucky, by court rule (Rules of Civ. Proc. 73.08).

In Meierhoffer v. Kennedy, 304 Mo 261, 263 SW 416 (1924), cited by United Pacific as holding to the contrary, the court declined to assess a 10 per cent penalty under the statute against either the defendant or surety, while recognizing that the surety would be liable if the penalty were assessed.

Therefore, because the surety agreed to pay such "damages" it cannot now contend that its constitutional right to due process of law has been violated on the ground that it had no previous notice that ORS 19.160 might be construed to include such "damages."[⊚] The fact that the assessment of such additional "damages" for frivolous appeals has been extremely rare also provides no basis for reaching any other conclusion. Indeed, because the assessment of such additional "damages" for frivolous appeals has been so rare, it follows, in our judgment, that sureties will not be unreasonably burdened by holding that these statutes must be interpreted in accordance with what we consider to be their plain language.

*Western Bank v. Morrill,* 246 Or 88, 95, 424 P2d 243 (1967), cited by petitioner, does not hold to the contrary. In that case we held that a cost bond, not a supersedeas, in the particular context of that proceeding, stayed the proceedings and prevented the respondent from collecting the judgment. For this reason the respondent suffered damages, which was interest on the uncollected judgment. The court held the interest was damages and, therefore, collectible against the surety on the cost bond. The inference of the decision is that if the filing of the bond does not prevent the respondent from collecting its judgment, the respondent cannot collect interest; the respondent will not be damaged. However, pursuant to ORS 19.160, we have awarded damages, other than interest, and as damages, such sum is recoverable against the surety.

There are also good practical reasons for such

---

[⊚] Although not directly in point, see Holbrook v. Investment Co., 32 Or 104, 106, 51 P 451 (1897). Kern et al v. Gentner et al, 176 Or 479, 159 P2d 190 (1945), cited by petitioner is not to the contrary as we read that case.

a result because unless sureties, as well as their principals, are covered by the terms of ORS 19.160, as well as ORS 19.040, that statute would otherwise be ineffective and meaningless in frivolous appeals by insolvent, or nearly insolvent, defendants. Yet it is in these very cases that the need for such an effective remedy is the greatest.

As stated by this court in *Portland Trust Co. v. Havely,* 36 Or 234, 245, 59 P 466, 61 P 346 (1899), in referring to another but related statute:

"* * * The undoubted purpose of the statute is to require the party appealing to amply secure the opposing litigant against costs or damages in case the appeal proves unsuccessful, and thus to prevent the instrumentalities of the law from being utilized for oppression, rather than for the purposes of justice. * * *"

For all of these reasons, the motion of defendant's surety, United Pacific Insurance Company, to recall the mandate in this case is denied.

McALLISTER, J., dissenting.