Argued and submitted August 3, affirmed October 25, 1983

# BROYLES,
*Respondent on review,*

*v.*

# ESTATE OF BROWN,
*Petitioner on review.*

## (TC A8103-01329,* CA A25385, SC 29607)

671 P2d 94

*See also* 62 Or App 662, 662 P2d 813.

---

\* Appeal from Multnomah County Circuit Court, Robert P. Jones, Judge. 62 Or App 662, 662 P2d 813 (1983).

James E. Griffin, Lake Oswego, argued the cause and filed the petition and briefs for petitioner on review.

Richard M. Rogers, Portland, and James Cox, Lake Oswego, argued the cause for respondent on review. Richard M. Rogers, Portland, filed the response to the petition and brief for respondent on review.

JONES, J.

Lent, J., filed a dissenting opinion.

Campbell, J., filed a dissenting opinion.

## JONES, J.

This case presents the question of the proper procedure and test to be used in deciding whether a penalty should be assessed under ORS 19.160 for pursuing an appeal without probable cause. The Court of Appeals allowed plaintiff's motion for the assessment of such a penalty. We affirm.

Plaintiff Broyles was injured when the car in which she was riding was hit by a car driven by Carroll Brown.[1]

At trial, where Broyles sought damages for her personal injuries, she testified during cross-examination as follows:

"Q. [by defense counsel] How long was it after the impact, the crash, that Mr. Brown's car pulled up beside you?

"A. Just a matter of seconds.

"Q. Okay. Was his window down, too?

"A. Yes, it was.

"Q. Did he say anything to you then?

"A. Yes. He said — he said, 'You hurt me', or something. And then I said, 'What?' And [the driver] said, — he said something about, 'You didn't have your turn signal on', and [the driver] said, 'Yes, I did. It's still engaged.'

"And then I asked him for his name and his insurance company."

Defense counsel immediately moved for a mistrial. Even though the trial court advised plaintiff that he believed the verdict would not stand on appeal, plaintiff resisted a mistrial. The trial court stated:

"Your verdict won't stand up, [plaintiff's counsel.]

"* * * * *

"* * * I would do anything in the world not to grant a mistrial. I'm open to any suggestion; but I have never known of a case that survived interjection of insurance into it and survived on appeal.

"* * * * *

---

[1] Brown died from unrelated causes. This court allowed a motion to substitute Arthur Slininger as personal representative.

> "I suppose, counsel, in a sense it's your risk. You put on four or five professional witnesses. You must have an inordinate amount of expense involved in the case."

The court then ruled:

> "All right, [plaintiff's counsel], I'm going to overrule the motion for mistrial. I think that you are the person — deny the motion for mistrial. I think you are the person — you and your client are the ones bearing the greatest risk in going ahead and obviously you desire to go ahead. And that's, I assume, a considered judgment on your part. I hope it works out well for you. I have grave concern about the position our appellate court will take, but I guess all we can do is try —"

The court instructed the jury to disregard plaintiff's mention of insurance and the trial continued.

The jury found for plaintiff. Following trial, defendant stipulated that plaintiff's reference to insurance was inadvertent.[2]

Defendant appealed, contending that the trial court was required by law to grant its motion for a mistrial, and in the alternative, that it abused its discretion in denying the motion for mistrial upon the plaintiff's injection of defendant's insurance company in a non-responsive answer.

Neither the defendant nor the insurance company filed a supersedeas bond. Plaintiff was required to obtain a writ of garnishment against the insurance company in order to collect a portion of her judgment.

On March 16, 1983, two days prior to oral argument on the merits before the Court of Appeals, plaintiff filed a motion for the assessment of a 10 percent penalty. The Court of Appeals heard oral arguments on the failure to grant a mistrial on March 18, 1983, but the possibility of a 10 percent penalty was not discussed. The case was affirmed without opinion on April 13, 1983. 62 Or App 662, 662 P2d 813 (1983). On May 4, 1983, the Court of Appeals received an affidavit from plaintiff's attorney in support of the motion for the assessment of a 10 percent "penalty," and allowed the motion.

---

[2] In the appellant's brief, the defendant states, "Defendant concedes for the purpose of this appeal that the injection was inadvertent on plaintiff's part, and defendant has entered into a stipulation to that effect."

Defendant's counsel filed an affidavit in opposition which was received May 9, 1983.

Defendant petitioned this court, presenting as the sole issue the propriety of the assessment. The statute in question, ORS 19.160, states:

> "Whenever a judgment or decree is affirmed on appeal, and it is for recovery of money, or personal property or the value thereof, the judgment or decree shall be given for 10 percent of the amount thereof, for damages for the delay, unless it appears evident to the appellate court that there was probable cause for taking the appeal."

Plaintiff argues that the court should use an objective standard in determining this assessment and the only inquiry should be whether the appeal raises a genuine question of law. If it does not, then the appeal was taken without probable cause and the penalty should be assessed. Affidavits concerning the subjective intent of the appellant would be irrelevant.

The plain reading of the statute justifies this interpretation. However, as far back as *Coffin v. Hanner, Jennings & Co.*, 1 Or 236 (1857), this court refused to assess a penalty under this statute unless it was certain whether the writ of error had been taken in other than good faith. Therefore, this court has declined to impose this discretionary penalty in a case of uncertain merit. We have also said that clear and convincing proof of bad faith in taking the appeal is necessary to support the imposition of this "penalty." *Morrison v. Hall*, 55 Or 243, 244, 104 P 963 (1909).

In *Stirling v. Dari-Delite, Inc.*, 262 Or 359, 491 P2d 1168 (1971), 494 P2d 252, 498 P2d 753 (1972), no probable cause existed for the appeal and the appeal was part of a "long-continued and calculated scheme by defendant to prevent the enforcement of a valid obligation for which defendant had no proper defense." These facts were extreme and aggravated; therefore, we held plaintiffs were entitled to the additional amount of 10 percent of the judgment as damages. *Id.* 366-67. We reiterated that the purpose of the statute was to impose a penalty to discourage frivolous appeals taken without probable cause for the purpose of delay. *Id.* at 370.

■ We decline, today, to follow past cases that required prior to imposition of the 10 percent penalty a determination

that the appeals were taken for "purposes of delay" or "in bad faith." The statute simply provides a 10 percent assesssment "for damages for delay." Further, there is no reference to "bad faith" or "purposes of delay"; the reference is to "probable cause."[3] The 10 percent assessment will be given unless there was probable cause for taking the appeal.

Under this statute as it is written, an appeal might be taken for the sole purpose to delay the payment of a money judgment so that the appellant can take advantage of favorable interest rates pending appellate decision, but no 10 percent assessment would be allowed if the appellant could prove that there was probable cause for the appeal. Also, an appellant could appeal a case in bad faith to vent emotions over a bad result or to demonstrate in principle that he or she was morally, if not legally, correct. Yet, if the appellant ultimately proved there was legal probable cause for the appeal, no 10 percent assessment would be appropriate.

■      To sum up, in applying ORS 19.160, the reviewing appellate court should determine:

(1)   Was the judgment below for recovery of money or personal property, or the value thereof?

(2)   Did the appellate court affirm that judgment?

(3)   If so, the appellate court shall impose the 10 percent in damages for delay, unless the court finds, from the record, briefs, argument or otherwise, that there was probable cause for taking the appeal.

■      Lack of probable cause would exist when there is no objective legal basis for the appeal. The objective standard

---

[3] We have already mentioned that there was not probable cause to appeal in the case of *Stirling v. Dari-Delite, Inc.,* 262 Or 359, 491 P2d 1168 (1971) , 494 P2d 252, 498 P2d 753 (1972). In *Harlow v. Chenoweth,* 158 Or 343, 75 P2d 937 (1938), the defendant appealed a $395.25 judgment from the district court to the circuit court to the Supreme Court, all on the basis that the denials contained in the reply were pregnant negatives. There was absolutely no merit to the appeal. In *Loveland v. Plant,* 132 Or 619, 287 P 219 (1930), the defendant appealed claiming that the trial judge should have instructed that the plaintiff-passenger would be guilty of contributory negligence if the passenger failed to exercise reasonable control over the operation of the automobile. Simply stating the proposition proves its absurdity and there was no probable cause for appeal.

There is no reason to continue the usage of words that are mere legal gloss in discussing a plainly written statute.

looks at the probable cause of the appeal from a reasonable lawyer's perspective. The problem involved in determining whether the appeal is or is not based on probable cause is not whether the attorney acted in the honest belief that probable cause existed, but whether any reasonable lawyer would conclude that any of the legal points asserted on appeal possessed legal merit.

■    The term "probable cause for appeal" does not mean probable cause for reversal of the judgment or that reversible errors were committed. It means there is presented a case in which appellant has assigned, or may assign, grounds that are open to doubt, or are debatable, or over which rational, reasonable or honest discussion may arise. *State v. Iverson,* 76 Idaho 117, 278 P2d 205 (1954).

An appeal taken without probable cause represents a time-consuming and disruptive use of the judicial process. Such an appeal ties up judicial resources and diverts attention from the already burdensome volume of work at the Court of Appeals. Thus, an appeal should result in the sanctions in ORS 19.160 when it has no probable cause. *Cf., In re Marriage of Flaherty,* 31 Cal 3d 637, 183 Cal Rptr 508, 516, 646 P2d 179 (1982).

■    The statute requires that "the judgment or decree shall be given for 10 percent of the amount thereof, for damages for the delay, *unless it appears evident to the appellate court* that there was probable cause for taking the appeal." (Emphasis added.) We read this to mean that no specific burden of proof is to be carried by any party involved in the appeal. As mentioned, the appellate court will simply make its determination from the criteria set forth above in step (3). It is assumed the parties will brief and argue the case fully. Therefore, supplemental briefs, affidavits or arguments are normally unnecessary.[4] Because we decide no burden of proof is required by the statute, we overrule all previous cases which refer to any burden of proof standard being applicable to ORS 19.160. *See, e.g., Nelson v. Oregon Ry. & Navigation Co.,* 13 Or 141, 9 P 321 (1886); *Morrison v. Hall,* 55 Or 243, 104 P 963 (1909); *Martin v. Glenbrook Farms Corp.,* 110 Or 87, 222 P

---

[4] No party has raised any denial of due process claim as discussed in *In re Marriage of Flaherty,* 31 Cal 3d 637, 183 Cal Rptr 508, 646 P2d 179 (1982).

1102 (1924); and *State ex rel Swalko v. Elliott,* 113 Or 632, 233 P 867 (1925).

Plaintiff argues that there was no probable cause to believe that defendant could prevail in the Court of Appeals, based on *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968). The injection of an irrelevant reference about insurance remains disfavored, and may in certain situations require a mistrial. This court stated in *Blake:*

> "* * * If insurance is not relevant and is intentionally injected into the case, the trial court must grant a motion for mistrial and if it does not it has committed reversible error. *Leishman v. Taylor,* 199 Or 546, 263 P2d 605 (1953). If insurance is not relevant, but has come into the case through inadvertence, whether or not to grant a mistrial is in the discretion of the trial court. *Denton v. Arnstein,* 197 Or 28, 54-56, 250 P2d 407 (1952). This discretion is largely uncontrolled by this court. We permit the trial court to decide whether or not prejudice has been created. *Wells v. Morrison,* 121 Or 604, 256 P 641 (1927)." *Id.* at 354-55.

Defendant in the present case stipulated that the mention of insurance was inadvertent, yet argues it was intentional. It cannot be both. If inadvertent, it obviously was not intentional and, therefore, whether or not to grant a mistrial is within the discretion of the trial court. Further, the *fact* of insurance was never "injected into the case." All plaintiff said was, "And then I asked him for his name and his insurance company." No answer was ever given to this question.

■ Answering the three questions set forth in this opinion, (1) the judgment below was for recovery of money; (2) the appellate court affirmed that judgment; and (3) the Court of Appeals found there was no probable cause for taking the appeal.

The decision of the Court of Appeals to assess 10 percent of the amount of the judgment for damages for delay is affirmed.

LENT, J., dissenting.

I agree in substance with what the majority says that ORS 19.160 means. The text of the statute requires that the

specified damages for delay must be given if a judgment[1] is affirmed on appeal and that judgment is for money or personal property or the value thereof unless it "appears evident" to the appellate court that there was probable cause for taking the appeal. I believe that the appellate court may look only to the record on appeal and the briefs and argument made in support of the claims of error to determine if there was probable cause for the appeal.

I agree with the majority as to the meaning of the term "probable cause for taking the appeal" insofar as the majority opinion draws upon *State v. Iverson,* 76 Idaho 117, 278 P2d 205 (1954).

Whether or not it was an accurate perception, many in the trial bar did believe that this court's reluctance, when this was the court of direct appeals, to give judgment under ORS 19.160 was because the statute was perceived to be one-sided. Many of the cases which came to this court were appeals taken by unsuccessful plaintiffs in actions for damages for personal injuries. The only money judgment against such an appellant was for costs and disbursements, usually a comparatively small sum and, therefore, an additional 10% was not a deterrent to appealing the case. In that kind of case, however, another deterrent to appealing without probable cause existed in a very real sense. The plaintiff usually did not have the means to pay for the necessary transcript or for the fee of an attorney on appeal. If the trial lawyer had the case on a contingent fee basis, the lawyer was not interested in investing further time in an appeal for which he could discern no probable cause. In order to prevent the defendant from enforcing the judgment pending appeal, the plaintiff would have to obtain a supersedeas bond, another not inexpensive item. It is clear to me that the statute was not one-sided.

Even less so is it one-sided at the present time. A judgment against a plaintiff for costs and disbursements is a judgment for money, and increasingly in recent times judgments against plaintiffs include substantial sums for defendants' attorney fees, either in addition to costs and disbursements or as a part thereof. The addition of 10% to a

---

[1] ORS 19.160 speaks to both judgments and decrees, but ORCP 67A. provides that "judgment" includes a decree.

defendant's judgment may well be as sizeable as the judgment for damages for delay as was allowed by the Court of Appeals in the case at bar. Even when the judgment in the trial court for the defendant for costs and disbursements is little more than nominal, the temptation to the plaintiff to appeal without probable cause is not particularly inviting. The cost in attorney fees and for a transcript must be laid out, ordinarily in an attempt to gain a new trial on a cause which the plaintiff has already lost once.

My reason for refusing to join the majority, despite my belief that the majority substantially correctly construes the statute, is a regard for the doctrine of *stare decisis*. As Justice Campbell has pointed out, this court has from an early time engrafted upon the statute a judicial gloss which makes application of the statute depend upon the good, or bad, faith of the appellant or whether the appeal might have been taken for the purpose of delay. That gloss was erroneously applied, but it is there. Had the legislature been not in accord with that treatment of its command, it could have made that known by appropriate legislative action. As I have written on an earlier occasion, when the court errs in construing a statute, as distinguished from a constitutional provision or the common law, correction should be made by the legislative department of government. See my separate opinion in *State v. Newton,* 291 Or 788, 815, 636 P2d 393, 410 (1981).

## CAMPBELL, J., dissenting.

I dissent. The majority has adopted a new rule interpreting ORS 19.160 and affirms the Court of Appeals. I disagree with the new rule and continue to favor the old rule. For those reasons I would reverse the Court of Appeals. An assessment of 10 percent of the damages should not be imposed against the defendant in this case.

ORS 19.160 in almost the same identical form has been a part of our laws since the Deady Code.[1] During that

---

[1] §537 of the Deady Code:

"Whenever a judgment or decree is affirmed on appeal, and the same be for recovery of money or personal property or the value thereof, the judgment or decree shall be given for ten per centum of the amount thereof for damages for the delay, unless it appears evident to the appellate court that there was probable cause for taking the appeal." (The section has opposite it in the margin the date of "Oct 11, 1862").

period of time, this court through its case law developed the following test for the assessment of a penalty under the statute: A party who desired an appellate court to assess this 10 percent penalty was required to prove both that there was no probable cause for the appeal and that the appeal was taken to delay enforcement of a valid obligation. We required that the party meet both parts of the test.

At least three different cases by this court support the above test.

In *Stirling v. Dari-Delite, Inc.,* 262 Or 359, 491 P2d 1168, 494 P2d 252, 498 P2d 753 (1972), we said at 370:

"We have also previously held that the purpose of ORS 19.160 was to impose a penalty to discourage frivolous appeals taken without probable cause for the purpose of delay, as in this case."

In *Harlow v. Chenoweth,* 158 Or 343, 75 P2d 937 (1938):

"We believe that this is a proper instance to invoke * * * for frivolous appeal, a penalty of 10 per cent * * * for the reason that it is apparent that this appeal was taken for the purpose of delay and without any probable cause." 158 Or at 349.

In *Loveland v. Plant,* 132 Or 619, 287 P 219 (1930):

"The appeal * * * is frivolous and trivial. It appears * * * that the appeal taken in the instant action was for the purposes of delay. * * * [T]he plaintiff * * * is allowed an additional 10 per cent of the judgment as damages for the delay caused by the appeal * * *." 132 Or at 622.

In the case of *Erb v. Shope,* 140 Or 253, 12 P2d 308 (1932), this court did not assess a penalty but at page 256 set out the purpose of the statute in question:

"The purpose of that enactment was to prevent the taking of an appeal where there was no probable cause therefor and to impose a penalty where the purpose of the appeal was for delay."

The majority, without playing taps and without naming the departed in an obituary, has overruled the above cases.

---

Apparently a similar statute existed as a part of the Oregon territorial law. *See Coffin v. Hanner, Jennings & Co.,* 1 Or 236 (1857).

The doctrine of *stare decisis* has been ignored. The majority is going to "write off" that part of the previous test which required that the appeal be taken for "purposes of delay."[2]

Although this court has not said so directly, an examination of the cases indicated that we have equated "lack of probable cause" with "frivolous" and "bad faith" with "for the purpose of delay." See *Shaw v. Pacific Supply Corp.,* 166 Or 508, 113 P2d 627 (1941); *Harlow v. Chenoweth, supra; Cobb v. S,. P. & S. Ry. Co.,* 150 Or 226, 44 P2d 731 (1935; *Christensen, Inc. v. Hansen Co.,* 142 Or 549, 21 P2d 195 (1933); *McCulley v. Homestead Bakery,* 141 Or 460, 18 P2d 226 (1933); *Loveland v. Plant, supra; State ex rel Swalko v. Elliott,* 113 Or 632, 233 P 867 (1925); *Manary v. Runyon,* 43 Or 495, 73 P 1028 (1903).

The majority has designed a test that is aimed solely at the merits of the appeal. It says:

"The problem involved in determining whether the appeal is or is not based on probable cause is not whether the attorney acted in the honest belief that probable cause existed, but whether any reasonable lawyer would conclude that any of the legal points asserted on appeal possessed legal merit." 295 Or at 801.

Michael S. Oberman writing in 47 Brooklyn Law Review 1057[3] (Coping With Rising Caseload II; Defining the Frivolous Civil Appeal, 1981) at page 1070:

"Absent a procedural context evidencing * * * abuse or bad faith conduct, sanctions should not be imposed for insufficiency of the merits of an initial, direct appeal. A course of conduct may, in the context of a very close legal question, appear to be determined advocacy; in the context of the 'long shot' appeal, the same conduct may be seen as a dilatory ploy.

---

[2]This footnote is in response to the majority's footnote number 3. I agree with the majority that there was no probable cause to appeal in *Stirling v. Dari-Delite, Inc., supra, Harlow v. Chenoweth, supra,* and *Loveland v. Plant, supra.* My point is that all three cases stand for the proposition that in order to impose a 10 percent penalty on appeal under what is now ORS 19.160, there must be proof that there was "no probable cause"for the appeal *and* that the appeal was taken "for purposes of delay." The majority has overruled those cases because it has scuttled the second part of the test.

[3]The law review article centers on Rule 38 of the Federal Rules of Appellate Procedure. That rule is:

"If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs for appellee."

"* * * * *

"Nonethless, the primary focus should not be a test of the merits. Judging the strength of the merits and the correctness of a district court opinion, while part of every litigator's calling, is far from an exact science. If, in good faith, an attorney concludes that the power of persuasion may prevail and a district court judgment may be overturned, that attorney and his or her client should not face sanctions if affirmance ultimately follows * * *. The costs of appeal borne by an appellant today, including printing the brief and appendix as well as attorney fees, are a significant factor weighing heavily against pursuit of a non-meritorious appeal."

See *In Re Marriage of Flaherty,* 31 Cal 3d 637, 183 Cal Rptr 508, 646 P2d 179 (1982).[4]

The previous test by this court which required proof that the appeal was taken "for purposes of delay" took into account the "good faith" of the appeal in addition to the question of "lack of probable cause."[5]

This writer can find no reported civil cases from this court, other than malicious prosecution cases, which define "probable cause." The majority now adopts a definition from *State v. Iverson,* 76 Idaho 117, 278 P2d 205 (1954), to the effect that "probable cause for appeal" does not require grounds for the reversal of the judgment, but only grounds "that are open to doubt, or are debatable, or over which rational, reasonable or honest discussions may arise." 295 Or at 801.

The record in this case shows that the defendant had probable cause to appeal under the majority's definition of that term.

---

[4]This case calls attention to the fact that there may be some due process concerns if a penalty is imposed without notice and a hearing.

[5]The concept of "good faith" spills over into our Disciplinary Rules. DR 7-102 states:

"(A) In his representation of a client, a lawyer shall not:

"* * * * *

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by *good faith* argument for an extension, modification, or reversal of existing law." (Emphasis added.)

The defendant, in its brief in the Court of Appeals, said that its first assignment of error presented the following question:

"Does a trial court abuse its discretion in denying a motion for mistrial promptly made upon the voluntary interjection of defendant's insurance company by the plaintiff in a non-responsive answer?"

In *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968), this court, in considering the consequences of the introduction of insurance into a jury trial, said:

"If insurance is not relevant and is intentionally injected into the case, the trial court must grant a motion for mistrial and if it does not it has committed reversible error. *Leishman v. Taylor,* 199 Or 546, 263 P2d 605 (1953). If insurance is not relevant, but has come into the case through inadvertence, whether or not to grant a mistrial is in the discretion of the trial court. *Denton v. Arnstein,* 197 Or 28, 54-56, 250 P2d 406 (1952)." 249 Or at 354.

The defendant stipulated that the plaintiff's remarks as to insurance were inadvertent and it is not trying to bring the appeal under the first half of the *Blake v. Webster Orchards, supra,* test. The defendant is *only* appealing under the second half of the test claiming the trial court abused his discretion by refusing to grant a mistrial.

It is admitted that appealing from a discretionary call by the trial judge places the appellant on the short end of the odds of winning the appeal, but it does not necessarily follow that the appeal is without probable cause.

In *Baker v. Brookmead Dairy, Inc.,* 230 Or 384, 370 P2d 235 (1962), the defendant appealed claiming abuse of discretion by the trial judge in denying a motion to file an amended answer on the day of the trial. We affirmed the trial court, but denied the motion for assessment of a 10 percent penalty under ORS 19.160, stating: "This is not such a groundless appeal as to invoke the penalty."

The majority opinion states: "Further, the *fact* of insurance was never 'injected into the case.' " (Emphasis in original.) 295 Or at 802. The transcript shows that immediately after the plaintiff volunteered on cross examination, "And then I asked him for his name and his insurance

company", the lawyer for the defendant moved for a mistrial. What more was he to do — wait until the plaintiff further volunteered the name of the company?

In *Lunski v. Lindemann,* 270 Or 316, 320, 527 P2d 254 (1974), questions by plaintiff's counsel of defendant asking whether defendant had a sign indicating whether insurance was sold at his office and whether an insurance business was part of his real estate business were considered "injecting insurance" into the case.

If this case were being decided under our previous case law, there would be ample evidence to show that the appeal was not taken "for the purpose of delay."[6] The defendant's lawyer could have interpreted the trial judge's remarks on the record as a strong recommendation to appeal. The experienced trial judge said:

> "Your verdict won't stand up, [plaintiff's counsel]. * * * I'm open to any suggestion; but I have never known of a case that survived interjection of insurance into it and survived on appeal. * * * I have grave concern about the position our appellate court will take * * *."

The record shows that the defendant was in fact represented by an insurance company. The plaintiff's judgment against the defendant as a result of the jury's verdict was the sum of $20,000. The attorney who represented the defendant was employed by the insurance company. The insurance policy had a limit of $15,000. The insurance company had a good faith duty to adequately represent the insured defendant. The defendant's attorney, when faced with the excess judgment of $5,000, must have thought about the possibility of a malpractice action if he did not appeal.

---

[6]The plaintiff, in her motion and affidavit for the imposition of a penalty, cited and relied upon *Parries v. Labato,* 44 Or App 71, 606 P2d 1284 (1980). This case can be distinguished. In both cases, the plaintiff obtained a judgment in excess of the insurance policy limits. The defendants in both cases appealed to the Court of Appeals. Neither defendant posted a supersedeas bond. In *Parries,* the plaintiff levied execution by way of garnishment, and the insurance company appealed the garnishment proceedings to avoid paying the judgment until the appeal in the principal case was decided. The appeal from the garnishment was clearly frivolous and intended only to delay. There was no penalty asessed when defendants appealed the principal case. *Parries v. Labato,* 40 Or App 851, 597 P2d 356 (1979). In this case when the plaintiff garnisheed the insurance company of the defendant, it paid the face amount of the policy in the sum of $15,000.

I dissent because: (1) The majority overrules our long-standing case law, (2) To demonstate that our previous case law had a sound basis, and (3) That in any event there was probable cause for the defendant's appeal in this case — it presents grounds for appeal which in the majority's words "are open to doubt, or are debatable, or over which rational, reasonable or honest discussions may arise."