Argued and submitted November 19, 1984, reversed and remanded October 30, 1985, reconsideration denied January 31, petition for review denied February 19, 1986
(300 Or 546)

In the Matter of the Compensation of
Jerry E. Kassahn, Claimant.

## KASSAHN,
*Petitioner,*

*v.*

## PUBLISHERS PAPER CO. et al,
*Respondents.*

(82-11458; CA A31131)

708 P2d 626

Diana Craine, Portland, argued the cause for petitioner. With her on the brief were Robert K. Udziela and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Cynthia S. C. Shanahan, Portland, argued the cause for respondents. With her on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimant seeks review of an order of the Workers' Compensation Board affirming a referee's determination that claimant suffered neither an aggravation of a May 12, 1980, compensable industrial injury nor an occupational disease. We hold that claimant proved an aggravation and remand for processing of his claim in accordance with ORS 656.262.

Claimant first suffered a compensable injury to his back in 1972. His doctors performed a "bilateral L4-5-S1 posterior fusion" to treat a bilateral spondylolysis at L-5. A March 20, 1972, medical report described his condition as "acute lumbosacral strain superimposed on the spondylosis of the lumbosacral spine." He was awarded 40 percent unscheduled disability. After a year of recuperation, claimant returned to relatively heavy work. He sustained another back injury in 1978. The second determination order awarded no additional permanent partial disability.

On May 12, 1980, claimant suffered an additional on-the-job injury to his back when his foot slipped while he was rolling a log onto a chain. He had pain in the right lower back and right leg. Medical reports before the 1980 injury did not indicate a concentration of pain on the right side of claimant's body. Claimant's treating physician, Dr. Post, an orthopedist, prescribed rest, medication, physical therapy and a lumbosacral brace. Claimant was released to return to work on August 18, 1980. On September 19, 1980, Post issued a closing examination report in which he indicated that, despite considerable improvement since the May, 1980, injury, claimant was continuing to suffer low back pain, constant numbness in the right leg, diffuse aching in the right thigh and leg and an occasional feeling of loss of control of the right foot. Claimant used a back brace from time to time. Post concluded:

> "He feels that opposed to the status prior to May of this year, he is having more pain and less mobility in his back. Comparing our present examination with that in June of 1973, he has significant limitation of motion in extension, mild limitation in flexion, but no other change. I am not sure what permanent partial impairment was determined at the time of his previous claim closure, but I would think that his further loss of motion would be a reasonable indication of additional permanent impairment and the degree thereof."

Claimant was awarded temporary total disability from May 15 through August 17, 1980, but no permanent partial disability. He did not appeal. He returned to work for the same employer, operating Caterpillar equipment and working as a security and clean-up laborer.

On September 17, 1982, claimant sought treatment from Post for a spontaneous onset of back pain that occurred while claimant was kneeling in his garden picking tomatoes. No injury or significant incident precipitated the onset of pain. Post explained the relationship between claimant's May 12, 1980, injury and the worsening of his low back condition in 1982 in a February 2, 1983, letter to claimant's attorney:

"Clearly, the patient's back problems relate to his long standing difficulties with spondylolisthesis, superimposed spinal strains, and L4-S1 lumbrosacral fusion. His most recent exacerbation, that of September 1982, is clearly related to his long standing and pre-existing back problems.

"At this point the issue becomes more legal than orthopedic.

"For instance, does the fact that in a treating physician's opinion there was increased permanent impairment following the injury of May 12, 1980 legally imply that subsequent exacerbations have relationship to that injury as well as to the long standing, pre-existing and underlying condition? My own inclination is to think that it was the pre-existing condition that was more important.

"In answer to another of your questions, the patient certainly is materially worsened since the date of his claim closure on October 21, 1980 [following the May 12, 1980 compensable injury], and it is this fact that has precipitated his recent care and time loss."

The doctor authorized time loss from September 17, 1982, to March 18, 1983.

The referee affirmed the carrier's denial of the aggravation claim and the alternative occupational disease claim. The opinion and order acknowledged that "there is no question that claimant is materially worse since the date of his claim closure on October 21, 1980." It goes on, however, to explain the basis upon which the carrier's denial of the aggravation claim was upheld:

"This is a case that requires expert medical opinion to

sustain claimant's burden of proof on the issue of causation. *See Miller v. SAIF,* 60 Or App 557 (1982).

"* * * * *

"While [Post's report of February 2, 1983, quoted above] is an answer following common sense and from the point of view of a physician of the medical arts, it is not an answer in the medico-legal sense, i.e., the rules established by the cases in the Workers' Compensation Act. We do not have, then, a medical opinion as to the pivotal issue in this case. While slavish adherence to some talismanic language or 'magic words' is repugnant, nevertheless claimant does not have the necessary medical proof that the 1980 occurrence has contributed to the 1982 spontaneous onset. While I find that claimant, who is an honest and credible witness and highly motivated, never returned to his pre-May, 1980 injury status, Dr. Post stated that the patient's own description of the interval between September of 1980 and September of 1982 might be germane because he had no such description in his record. While I find that claimant was worse after 1980 (had increased residuals) I do not understand that this can be substituted for a direct medical opinion that there was a causal relationship to the 1980 occurrence."

The referee erred in concluding that "claimant does not have the necessary medical proof that the 1980 occurrence has contributed to the 1982 spontaneous onset."

■ Claimant argues that *Garbutt v. SAIF,* 297 Or 148, 681 P2d 1149 (1984), eliminates the necessity of a physician's opinion to support claimant's aggravation claim. We do not agree. *Garbutt's* holding that a claim for aggravation need not be supported by a written opinion from a physician relates only to the statutory adequacy of a claim, not to the sufficiency of proof. *See Garbutt v. SAIF, supra,* 297 Or at 152 (Peterson, C. J., dissenting). The Board may be persuaded by lay testimony on medical issues, but if the Board finds the lay testimony unpersuasive or insufficient to resolve complicated medical issues, it is not bound by that testimony and may require expert medical opinion to resolve the issue. *Uris v. Compensation Department,* 247 Or 420, 424, 427 P2d 753, 755, 430 P2d 862 (1967).

■■ The letter from claimant's doctor makes it clear that claimant's condition has worsened and that at least part of his permanent impairment is a result of the May 12, 1980, injury.

Post expressed doubt about whether that necessarily means "that subsequent exacerbations have relationship to that injury * * *." The question, however, is not whether the exacerbation itself is related to the May 12, 1980, injury, but whether that injury "is a material contributing cause of [claimant's] worsened *condition.*" *Grable v. Weyerhaeuser Company,* 291 Or 387, 401, 631 P2d 768 (1981) (emphasis supplied). *See Lobato v. SAIF,* 75 Or App 488, 492, 706 P2d 1025 (1985). Because wae can infer from the letter's statement concerning "increased permanent impairment following the injury of May 12" that the 1980 injury caused at least a part of claimant's present, worsened condition ( *i.e.,* his condition *after* the "exacerbation"), and because our own examination of the record convinces us that the role played by the 1980 injury was material, we conclude that claimant has established a compensable aggravation. ORS 656.273.

Employer attempts to disprove the relationship between claimant's condition and the 1980 injury by arguing that "the symptoms which claimant initially experienced in September, 1982, were clearly not the same as those following the 1980 injury." The argument is based entirely on evidence that claimant's symptoms in 1980 were concentrated on the right side of his body, and that Post's chart notes initially describe claimant's pain in 1982 as a "spontaneous onset of *left* lumbar pain." (Emphasis supplied.) That notation is the only indication in the record that the worsening claimant suffered in 1982 related to the left side of his back. Post's chart notes also report that claimant "indicates the *midlumbar* areas as the source of pain." (Emphasis supplied.) At the hearing, claimant testified:

"Q. Okay. Can you describe for us how your back hurt on May 12, 1980 or on May 19. Let's take May 19 when you actually went to the doctor. Can you remember how your back felt? What was hurting you?

"A. It was like somebody was holding a torch to it, a real burning sensation.

"Q. Was that on the right, left or in the middle?

"A. It was more or less in the — well, the whole bottom part of my back.

"Q. Was one or both of your legs bothering you, as well?

"A. No, just the one, my right leg."

He later testified on cross-examination as follows:

> "Q. Was this a sudden onset of pain? I mean, did it hit you hard, or did it kind of gradually get worse while you were picking tomatoes?
>
> "A. It hit me hard.
>
> "Q. It came on quickly?
>
> "A. Yes.
>
> "Q. Where did you hurt when the pain came on like that?
>
> "A. From about the center of my back way down into my tailbone and down my right leg.
>
> "Q. You weren't able to recall whether it was the left or the right? Do you recall it was in the center of your back?
>
> "A. Yes."

Claimant's medical reports in the months following also suggest a concentration of symptoms on his right side. On November 3, 1982, Post wrote:

> "Physical therapy has resulted in considerable improvement in Jerry's neck condition but his right lumbar area has continued to bother him. In addition, he has some radiating discomfort in the right anterior thigh region and periodic feeling of numbness."

Dr. Smith's report of November 15, 1982, states:

> "Six weeks ago he was picking tomatoes in his yard. He was on his knees and experienced muscle spasm in the right side of his low back. * * * He has right leg pain which has continued intermittently and is predominantly manifested by aching in the right shin. Occasionally his right foot 'flops' when walking. * * * There are no symptoms in the left leg."

The evidence is persuasive that claimant's condition in 1982 was a consequence of the 1980 injury rather than the injury of 1972.

Reversed and remanded for processing of claimant's aggravation claim in accordance with ORS 656.262.