Argued and submitted September 2, decision of Court of Appeals reversed and case remanded to Court of Appeals with instructions November 5, 1992

In the Matter of the Compensation of
Randy R. Westfall, Claimant.

Randy R. WESTFALL,
*Petitioner (below),*

David C. FORCE,
*Petitioner on Review,*

*v.*

RUST INTERNATIONAL
and Underwriters Adjusting Company,
*Respondents on Review.*

(WCB 88-01147; CA A62442; SC S39025)

840 P2d 700

David C. Force, of Vick & Gutzler, Salem, argued the cause and filed the petition *in propria persona*.

Darren L. Otto, of Scheminske & Lyons, Portland, argued the cause for respondents on review and filed a response.

James L. Edmunson, Eugene, argued the cause and David Gernant, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

GRABER, J.

## GRABER, J.

This case involves the interpretation and application of ORS 656.390, a provision of the Workers' Compensation Law providing for the imposition of sanctions against a lawyer who files a frivolous petition for judicial review or motion for reconsideration in connection with a workers' compensation claim.[1] We first set out the extensive procedural background of the case.

Claimant filed a petition for judicial review of an order of the Workers' Compensation Board (Board) denying compensation for a back injury. The Court of Appeals affirmed the Board's decision without opinion. *Westfall v. Rust International*, 102 Or App 373, 795 P2d 124 (1990) (*Westfall I*). The employer against whom the claim was made (employer) petitioned the Court of Appeals for sanctions against one of claimant's lawyers, on the ground that the petition for judicial review was frivolous within the meaning of ORS 656.390. The Court of Appeals granted the petition and imposed sanctions against the lawyer in the amount of employer's reasonable attorney fees. *Westfall v. Rust International*, 104 Or App 132, 798 P2d 1124 (1990) (*Westfall II*). The lawyer against whom the sanctions were imposed petitioned for reconsideration of the sanction order, arguing that he was not the lawyer who filed the original petition for judicial review of the denied claim. The Court of Appeals rejected that argument and affirmed the sanction order, reasoning that he had signed and filed a brief in the original petition for judicial review of the denied claim that was "wholly devoid of merit." *Westfall v. Rust International*, 107 Or App 395, 398, 812 P2d 31 (1991) (*Westfall III*).

The lawyer sought review in this court, which vacated the sanction order and remanded the case to the

---

[1] ORS 656.390 provides:

"Notwithstanding ORS 656.236, if either party appeals for review of the [workers' compensation] claim to the Court of Appeals or to the Supreme Court, or files a motion for reconsideration of the decision of the Court of Appeals or the Supreme Court, and the court finds that the appeal or motion for reconsideration *was frivolous or was filed in bad faith or for the purpose of harassment*, the court may impose an appropriate sanction upon the attorney who filed the appeal or motion. The sanction may include an order to pay to the other party the amount of the reasonable expenses incurred by reason of the appeal or motion, including a reasonable attorney fee." (Emphasis added.)

Court of Appeals for further consideration in the light of *Mattiza v. Foster*, 311 Or 1, 803 P2d 723 (1990). *Westfall v. Rust International*, 312 Or 34, 815 P2d 1272 (1991) (*Westfall IV*). In *Mattiza*, this court considered another sanctions statute, ORS 20.105(1),[2] and held that there were three prerequisites to an award of attorney fees under that statute: that the party seeking the award had prevailed in the relevant forum; that the claim, defense, or ground for appeal or review was meritless, that is, was "entirely devoid of factual or legal support"; *and* that the party against whom the sanction was sought had an improper purpose in bringing the claim, defense, or ground for appeal or review. *Mattiza v. Foster, supra*, 311 Or at 10. An improper purpose could be shown by evidence of actions taken in bad faith, wantonly, or solely for oppressive purposes; rarely, it could be inferred solely from the meritlessness of the claim. *Id.* at 9. Actions taken in bad faith were further construed as "conduct[] the primary aim of which was something other than the procurement of the fair adjudication of an authentic claim." *Id.* at 12.

On remand, the Court of Appeals concluded that the test for bad faith under ORS 20.105(1) had no bearing on a request for sanctions under ORS 656.390 for a "frivolous" appeal. *Westfall v. Rust International*, 111 Or App 289, 826 P2d 64 (1992) (*Westfall V*). Citing the disjunctive phrasing of ORS 656.390, the Court of Appeals held that sanctions may be ordered under that statute for a frivolous appeal even if that appeal was not filed in bad faith or for the purpose of harassment. 111 Or App at 292. Applying the *Mattiza* court's interpretation of the term "meritless" to the term "frivolous" in ORS 656.390, the Court of Appeals found that the petition for judicial review filed here was frivolous and affirmed the earlier sanction order. *Id.* at 293. We allowed review to address the interpretation of ORS 656.390.

---

[2] ORS 20.105(1) provides:

"In any civil action, suit or other proceeding in a district court, a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court may, in its discretion, award reasonable attorney fees appropriate in the circumstances to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party willfully disobeyed a court order or acted in bad faith, wantonly or solely for oppressive reasons."

We agree with the Court of Appeals that there is no basis in the record for concluding that the petition for judicial review in this case was filed "in bad faith," ORS 656.390. *Westfall V, supra,* 111 Or App at 292. Neither is there a basis in the record for concluding that it was filed "for the purpose of harassment," ORS 656.390. Therefore, the first issue for us to consider is the meaning of the word "frivolous" in ORS 656.390.

■ In interpreting a statute, our task is to discern the intent of the legislature. ORS 174.020; *State ex rel Juv. Dept. v. Ashley,* 312 Or 169, 174, 818 P2d 1270 (1991). We begin with the text and context of the statute. ORS 174.010; *Porter v. Hill,* 314 Or 86, 838 P2d 45 (1992). When the text and context of the statute do not make the legislature's intention clear, we turn to legislative history to aid us in construing the statute. *Boone v. Wright,* 314 Or 135, 836 P2d 727 (1992).

ORS 656.390 was enacted in 1987. Or Laws 1987, ch 884, § 31. The statute does not define "frivolous" or otherwise indicate what the legislature meant in using that word. The legislative history of the statute reveals that the provision was based on FRCP 11. Tape Recording, Senate Labor Committee, June 10, 1987, Tape 211, Side B. FRCP 11 states that a lawyer's signature on pleadings, motions, or other papers

"constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in cost of litigation."

Respecting FRCP 11, the court in *Eastway Const. Corp. v. City of New York,* 762 F2d 243, 253-54 (2d Cir 1985), *cert den* 484 US 918 (1987), stated:

"Prior to the 1983 amendment [to the rule], the rule spoke in plainly subjective terms: An attorney's certification of a pleading was an assertion that 'to the best of his knowledge, information, and belief, there [was] good ground to support it.' The rule, therefore, contemplated sanctions only where

there was a showing of bad faith, and the only proper inquiry was the subjective belief of the attorney at the time the pleading was signed.

"The addition of the words 'formed after a reasonable inquiry' demand[s] that we revise our inquiry. No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. * * * Simply put, subjective good faith no longer provides the safe harbor it once did.

"'* * * * *

"* * * [W]e hold that a showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, the sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." (Citations omitted; footnote omitted; emphasis in original.)

*See also Business Guides v. Chromatic Com. Enterprises*, 892 F2d 802, 808 (9th Cir 1989) (federal circuit courts "have repeatedly emphasized that amended Rule 11 imposes an *objective* standard of conduct" (emphasis in original)), *aff'd* 498 US 533, 111 S Ct 922, 112 L Ed 2d 1140 (1991); *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F2d 1470, 1475-76 (9th Cir 1988) (lawyer can violate Rule 11 by filing "frivolous" paper even though not done for an improper purpose).

■ The Court of Appeals correctly concluded — in reliance on interpretations of FRCP 11 — that the imposition of sanctions under ORS 656.390 for a "frivolous" appeal does not depend on the subjective intent of the lawyer charged with filing the frivolous appeal. *Westfall V, supra*, 111 Or App at 292. However, the definition announced by the Court of Appeals in *Westfall V* is lacking in two respects. First, the court equated the term "meritless," which this court defined in *Mattiza v. Foster, supra*, with the term "frivolous" in ORS 656.390, even though the wording and structure of ORS 656.390 and ORS 20.105(1) differ considerably. *See ante* note 1 (quoting ORS 656.390) and note 2 (quoting ORS 20.105(1)). Second, the court's definition does not expressly allow for a

good faith argument for the extension, modification, or reversal of existing law. We hold that an appeal is "frivolous" within the meaning of ORS 656.390 if every argument on appeal is one that a reasonable lawyer would know is not well grounded in fact, or that a reasonable lawyer would know is not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law.[3]

■    Having established that standard, we turn to the question whether the arguments presented to the Court of Appeals in claimant's petition for judicial review of the Board's order permitted the court to find that the appeal was frivolous. *Westfall II, supra,* 104 Or App 132. That is, we ask whether every argument made by claimant's lawyer was one that a reasonable lawyer would know was not well grounded in fact, or that a reasonable lawyer would know was not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law.[4] Claimant's lawyer contends specifically that his argument is one that was warranted by a reasonable argument for the extension or modification of existing law. We begin our inquiry by summarizing the arguments made, and the facts and law relied on, by claimant's lawyer in his brief submitted to the Court of Appeals in *Westfall I.*

In January 1986, claimant suffered a low back strain during the course of his employment. He immediately sought and received treatment from a physician. Employer accepted the claim as a non-disabling injury. In July 1986, the treating physician declared that claimant was medically stationary without permanent impairment. Claimant requested continued treatment on the ground that his back continued to bother him, but employer denied that request.

Between July 1987 and December 1987, claimant sought and received treatment for additional symptoms of

---

[3] Even though this test differs from the one announced in *Mattiza v. Foster,* 311 Or 1, 803 P2d 723 (1990), we note that a lawyer whose appeal is not "frivolous" within the meaning of ORS 656.390 also would not be subject to sanctions under ORS 20.105(1).

[4] When the Court of Appeals properly finds that an appeal is frivolous, then it has discretion whether to impose a sanction and, if so, to decide what sanction is appropriate. ORS 656.390.

back pain. In December 1987, employer denied his claim for that treatment. Medical evidence was submitted to a referee by experts on both sides; claimant's experts attributed claimant's symptoms to the earlier compensable injury, while employer's experts attributed them to a congenital condition. In April 1988, the referee found that claimant had suffered no intervening injury that could have contributed to his additional symptoms and that claimant's testimony was credible. He also concluded that the issue whether the later symptoms were related to the compensable injury was "not a complicated case." The referee set aside the denial, and employer appealed to the Board.[5]

Pursuant to its authority under ORS 656.295, the Board reversed the referee's decision.[6] Under the heading "CONCLUSIONS OF LAW," the Board stated that the case "present[ed] a complex medical question," that expert medical testimony therefore was relevant, and that the weight of such testimony, including evidence that claimant did not seek medical treatment between July 1986 and July 1987 and evidence that claimant had a pre-existing condition disposing him to back strain, supported a denial of his claim.

[5] ORS 656.289 provides in part:

"(1) Upon the conclusion of any hearing, * * * the referee shall * * * determine the matter and make an order in accordance with the referee's determination.

"* * * * *

"(3) The order is final unless, within 30 days * * *, one of the parties requests a review by the board under ORS 656.295."

[6] ORS 656.295 provides in part:

"(5) The review by the board shall be based upon the record * * * and such oral or written argument as it may receive. * * * Any finding of fact regarding the worker's impairment must be established by medical evidence that is supported by objective findings. * * * However, if the board determines that a case has been improperly, incompletely or otherwise insufficiently developed or heard by the referee, it may remand the case to the referee for further evidence taking, correction or other necessary action.

"(6) The board may affirm, reverse, modify or supplement the order of the referee * * *.

"* * * * *

"(8) An order of the board is final unless within 30 days after the date of mailing of copies of such order to the parties, one of the parties appeals to the Court of Appeals for judicial review pursuant to ORS 656.298."

In the brief supporting his petition for judicial review pursuant to ORS 656.298,[7] claimant's lawyer presented the following questions:

"1. Is the issue whether an injured worker's low back strain has continued to produce symptoms over a period of time without intervening injury, a 'complex medical question' under the facts of this case?

"2. When the credible lay and expert testimony in a workers' compensation case is found by a Referee not to present a complex medical question, does the law compel the Board to reverse the Referee and reinstate a denial of medical care in an accepted claim because two members of the Workers' Compensation Board do not understand the facts as well as the Referee did?"

As his only assignment of error, claimant's lawyer asserted:

"The Workers' Compensation Board erred in holding that Claimant's history of continuing symptoms while employed moving furniture for Rust International presented a 'complex medical question' which precluded a finding of compensability, based upon that history, as a matter of law."

---

[7] ORS 656.298 provides in part:

"(1) Any party affected by an order of the board may, within the time limit specified in ORS 656.295, request judicial review of the order by the Court of Appeals.

"* * * * *

"(6) The review by the Court of Appeals shall be on the entire record forwarded by the board. Review shall be as provided in ORS 183.482(7) and (8)."

ORS 183.482 provides in part:

"(7) Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. * * *

"(8)(a) The court may affirm, reverse or remand the order. If the court finds the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order;

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

In the argument portion of the brief, claimant's lawyer pointed out that the Board had based its reversal of the referee's decision on its conclusion that the question of causation of claimant's back condition was a "complex medical question" and that resolution of the case therefore turned on the weight of medical opinion. He pointed out that the Board itself, citing *Kassahn v. Publishers Paper Co.*, 76 Or App 105, 708 P2d 626 (1985), *rev den* 300 Or 546 (1986), had labeled that conclusion a "conclusion of law."[8] In *Kassahn*, the Court of Appeals held:

> "The Board may be persuaded by lay testimony on medical issues, but if the Board finds the lay testimony unpersuasive or insufficient to resolve complicated medical issues, it is not bound by that testimony and may require expert medical opinion to resolve the issue." 76 Or App at 109 (citation omitted).

Claimant's lawyer argued that the Board "did not find claimant's testimony unpersuasive" or "insufficient." He contended that the Board therefore erred in "interpreting ORS 656.295(5) and *Kassahn* to require expert medical analysis of the Claimant's credible testimony." Claimant's lawyer further argued that, because the Board's conclusion regarding claimant's symptoms was a conclusion of law, the Board was precluded from taking the action that it took. According to claimant's lawyer, although ORS 656.295(5) allows the Board to remand a case to the referee for the taking of further evidence if the Board determines that the record is "improperly, incompletely or insufficiently developed," it does not permit the Board simply to reverse a legal conclusion, such as the referee's "legal determination" that a case is "simple." He argued that the Board's error had the effect of altering claimant's burden of proof as to the causation of his injury. Finally, he argued that, where the Board has erroneously interpreted a provision of law, the Court of Appeals, pursuant to ORS 183.482(8)(a), should set aside or modify the Board's order, or remand it for further action under a correct interpretation of the law.

Employer countered that claimant's brief presented only a "factual dispute" disguised as an issue of law; that the

---

[8] For the purposes of this case, we need not decide whether the Board's label was correct.

Board's factual findings regarding claimant's medical condition were properly made under its power of *de novo* review; and that there was substantial evidence to uphold those findings. Employer also countered that claimant's argument regarding the burden of proof was "completely without merit" because, according to decisions of this court, "in all but uncomplicated cases, claimant must carry his burden of proof by a preponderance of the evidence and must prove his case through the use of competent expert evidence." As noted above, the Court of Appeals affirmed the Board's decision without opinion, *Westfall I, supra,* and ordered sanctions against claimant's lawyer, on the grounds that there was "substantial evidence to support the Board's decision" and that the appeal was "frivolous." *Westfall II, supra,* 104 Or App at 133.

In *Uris v. Compensation Department,* 247 Or 420, 424, 426, 427 P2d 753, 430 P2d 861 (1967), this court held:

"It is, of course, the settled rule that

" '* * * where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons.' [Citations omitted.]

"* * * * *

"In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an *uncomplicated situation,* the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was heretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury[.]" (Emphasis added; citation omitted.)

That principle was applied in *Pea v. Compensation Department,* 248 Or 487, 492-93, 435 P2d 821 (1967), where this court stated:

"It is apparent from the evidence presented by the plaintiff in this case, examined in light of the principles stated in

*Uris v. Compensation Department, supra,* that no medical testimony is necessary * * *."

*See also Barrett v. Coast Range Plywood,* 294 Or 641, 645, 661 P2d 926 (1983) (in workers' compensation claim, whether rule regarding necessity for expert medical testimony is to be applied depends on whether medical question presented is "uncomplicated"); *Cleland v. Wilcox,* 273 Or 883, 543 P2d 1032 (1975) (where physician's evidence showed plaintiff's injury was not an "uncomplicated situation," rule stated in *Uris* required expert medical testimony); *Austin v. Sisters of Charity,* 256 Or 179, 183, 470 P2d 939 (1970) (where features of case met criteria set out in *Uris,* jury could decide causation of injury without expert testimony).

Claimant's argument centered on the meaning and application of the term "uncomplicated" and related terms, as applied to the medical "situations" of workers' compensation claimants. The use of those terms by referees and by the Workers' Compensation Board in the adjudication of workers' compensation claims is, arguably, sufficiently established to qualify those terms as "legal terms," and they appear to have been used as such by the parties here.[9]

---

[9] Here, the issue for claimant was the meaning and application of dispositive terms used in a decision of this court, *Uris v. Compensation Department, supra,* and its progeny. An analogous situation is presented when the meaning and application of a statutory term are at issue. That the application of a statute requires an examination of the facts and circumstances presented to the court does not make the matter a "question of fact" in all cases. *Can-Key v. Industrial Leasing,* 286 Or 173, 183, 593 P2d 1125 (1979). In *McPherson v. Employment Division,* 285 Or 541, 547-48, 591 P2d 1381 (1979), this court stated:

"The identification of errors of fact and errors of law for purposes of the scope of review * * * when an agency applies a broad statutory term to a particular situation, is one of the most problematic issues in administrative law. Agency decisions interpreting a legal term in applying it to particular facts are sometimes said to pose a 'mixed question of law and fact.' * * *

" 'Facts' * * * are those elements entering into the decision that describe phenomena and events without reference to their significance under the law in question, or to put it another way, as they might be described by a lay person unaware of the disputed legal issue." (Citations omitted.)

The issue in *McPherson* was the meaning and application of the term "good cause" as used in a provision of the unemployment statute. The court held that the meaning and application of the term were "plainly [questions] of law." *Id.* at 548. *See also Kirkpatrick v. Peet,* 247 Or 204, 211, 428 P2d 405 (1967) (question whether certain facts are sufficient to support an administrative finding that a certain legal relationship exists is a question of law for the court to decide).

In his petition for judicial review of the Board's decision to the Court of Appeals, claimant's lawyer conceded that, "on judicial review pursuant to ORS 656.298, the Court [of Appeals] will not disturb the Board's weighing of competing medical opinions in the record." However, he also argued that, under that statute, "the Legislature has not prohibited the Court from reviewing the Board's applications of 'provisions of law.' " We conclude that the meaning of the terms used in *Uris v. Compensation Department, supra*, as well as the application of those terms to the facts of a particular worker's medical situation, arguably are questions of law that are reviewable by the Court of Appeals under ORS 656.298(6) and 183.482(8)(a). Claimant's lawyer's argument to that effect was not one that a reasonable lawyer would know was not warranted by a reasonable argument for the extension or modification of existing law. Therefore, the appeal was not "frivolous" within the meaning of ORS 656.390.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals with instructions to vacate the order imposing sanctions against claimant's lawyer.