Argued and submitted July 11, affirmed September 17, 1997

## Allen D. FECHTIG,
*Respondent,*

*v.*

## CITY OF ALBANY,
*Respondent below,*

*and*

## Duane DRUSHELLA,
*Petitioner.*

## (LUBA No. 95-256; CA A97764)

946 P2d 280

*See also* 150 Or App 28, 946 P2d 290.

James H. Bean argued the cause for petitioner. With him on the brief were Robin A. Jones and Lindsay, Hart, Neil & Weigler, LLP.

Garry P. McMurry argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Rossman, Senior Judge.

DEITS, C. J.

## DEITS, C. J.

Respondent Fechtig appealed to LUBA from the City of Albany's approval of petitioner Drushella's applications for a planned development, a 38-lot single family subdivision and related permits. LUBA affirmed the city's decision. 31 Or LUBA 410 (1996). Thereafter, Drushella petitioned for attorney fees pursuant to ORS 197.830(14)(b). Drushella seeks our review of LUBA's denial of that petition. Two questions are presented: whether there was any merit to (or "probable cause" for) any of Fechtig's arguments in his appeal to LUBA; and, if so, whether an award of attorney fees under ORS 197.830(14)(b) was therefore precluded, even if any or all of Fechtig's other arguments were totally lacking in merit. We agree with LUBA's affirmative answers to both questions, and we affirm.[1]

ORS 197.830(14)(b) provides that LUBA

"shall * * * award reasonable attorney fees and expenses to the prevailing party against any other party who [LUBA] finds presented a position without probable cause to believe the position was well-founded in law or on factually supported information."

Before its amendment by Oregon Laws 1995, chapter 160, section 1, the statute provided that LUBA

"may * * * award reasonable attorney fees and expenses to the prevailing party against any other party who [LUBA] finds presented a position without probable cause to believe that the position was well-founded, and primarily for a purpose other than to secure appropriate action by [LUBA]."

In the underlying appeal on the merits, Fechtig advanced 13 assignments of error. Two of those assignments

---

[1] Both the underlying controversy and the attorney fee issue in this case are related to those in *Fechtig v. City of Albany (A97067)*, 150 Or App 28, 946 P2d 290 (1997). In addition to the substantive relationship, that companion case also plays a significant tangential role here. In the companion case, Fechtig submitted a memorandum of additional authorities containing a copy of LUBA's opinion denying the attorney fee petition in the present case. Because Drushella's brief here fails to append a copy of that opinion, in violation of our rules, the coincidence of Fechtig's filing in the companion case is the only reason that this court had access to LUBA's opinion before the oral argument in this case. *See Horizon Construction, Inc. v. City of Newberg*, 114 Or App 249, 251, 834 P2d 523 (1992).

took issue with the city's interpretation of, and related failure to make assertedly necessary findings under, Albany Municipal Code (AMC) section 18.04.040, a provision of the city zoning ordinance relating to grading and fill operations in or proximate to drainageways. The provision requires findings that the operations "will not adversely affect the existing and ultimate developments *or* land adjacent to the drainageway." (Emphasis supplied.) Because Fechtig's property is adjacent to the drainageway in question, he contended to the city and, later, to LUBA that the ordinance provision applied to it and that findings concerning adverse impacts on his property were required. The city disagreed, based on its interpretation that the word "or" in the ordinance was a typographical error, and that the word "on" was intended instead. Hence, the city concluded that Fechtig's property was not part of the area for which adverse effects had to be considered.

In its opinion on the merits, LUBA rejected Fechtig's two assignments that challenged the city's interpretation and resulting nonapplication of the ordinance. LUBA concluded that the local interpretation was not "clearly wrong" and, accordingly, could not be reversed consistently with *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). However, in its order denying Drushella's petition for attorney fees, LUBA concluded that, although Fechtig's arguments regarding the city's interpretation did not demonstrate reversible error, neither did they lack "probable cause" within the meaning of ORS 197.830(14)(b).

LUBA relied for that conclusion on its earlier opinion in *Contreras v. City of Philomath*, ____ Or LUBA ____ (LUBA No. 96-111, Order on Petition for Attorney Fees, October 22, 1996), from which we quote at length:

"We are guided in our inquiry by the Oregon Supreme Court's decision in *Broyles v. Estate of Brown*, 295 Or 795, 671 P2d 94 (1983), where the court interpreted the meaning of 'probable cause' as that term is used in ORS 19.160,[2] a

---

[2] ORS 19.160 provides:

"Whenever a judgment or decree is affirmed on appeal, and it is for recovery of money, or personal property or the value thereof, the judgment or decree shall be given for 10 percent of the amount thereof, for damages for the delay, unless it appears evident to the appellate court that there was probable cause for taking the appeal."

statute that requires a probable cause analysis similar to that required by ORS 197.830(14)(b). ORS 19.160 allows an appellate court to attach an additional 10% to a judgment for the recovery of money that is affirmed on appeal 'unless it appears evident to the appellate court that there was probable cause for taking the appeal.' In *Broyles*, the court held:

> " 'Lack of probable cause would exist where there is no objective legal basis for the appeal. The objective standard looks at the probable cause of the appeal from a reasonable lawyer's perspective. The problem involved in determining whether the appeal is or is not based on probable cause is not whether the attorney acted in the honest belief that probable cause existed, but whether any reasonable lawyer would conclude that any of the points asserted on appeal possessed legal merit.

> " 'The term "probable cause for appeal" does not mean probable cause for reversal of the judgment or that reversible errors were committed. It means there is presented a case in which appellant has assigned, or may assign, grounds that are open to doubt, or are debatable, or over which rational, reasonable or honest discussion may arise.' *Broyles*, 295 Or at 800-01.

"ORS 197.830(14)(b) requires this Board to award attorney fees against a party whose appeal is not supported by probable cause. We believe the above-quoted 'reasonable lawyer' approach provides an appropriate starting point for the probable cause analysis required by ORS 197.830-(14)(b). Applying the *Broyles* definition of probable cause to the case at hand, this Board must make an award of attorney fees to intervenor if we determine that no reasonable lawyer would conclude that any of the legal points asserted on appeal possessed legal merit. In making this determination, we will consider whether any of the issues raised in petitioners' appeal were open to doubt, or subject to rational, reasonable or honest discussion." (Footnotes omitted.)

---

ORS 19.160 is a statute of antique vintage. ORS 197.830(14)(b) was enacted in its original form in 1983. Or Laws 1983, ch 827, § 31. Before its enactment, no Oregon statute other than ORS 19.160 of which we are aware used a "probable cause" formulation as the test for a meritless presentation or for the imposition of penalties for making such a presentation. Given the unusual wording that they are unique in sharing, it appears clear that ORS 197.830(14)(b) was in some measure modeled on ORS 19.160. *See Pfeifer v. City of Silverton*, 146 Or App 191, 931 P2d 833 (1997).

■    LUBA applied the *Contreras* reasoning here, and concluded that Fechtig's arguments that turned on the city's interpretation readily survived the test of probable cause articulated in that case. As LUBA explained:

> "[T]he city interpreted its ordinance to mean something different from what it actually said. [Fechtig] challenged that interpretation, and raised debatable issues * * *."

We agree with LUBA's probable cause test as expressed in *Contreras*[3] and we agree with LUBA that Fechtig's two assignments that turn on the city's interpretation of its ordinance passed that test. It is, at the least, a debatable issue whether the ordinance could reasonably be interpreted as the city did, by treating a word that makes facial sense in its context as being a typographical error.

■    Drushella acknowledges, with apparent reference to Fechtig's two assignments arising from the city's interpretation of the grading and fill provision, that "it can fairly be argued that one of the issues Mr. Fechtig raised had some merit." Drushella also appears to agree that LUBA's test for determining whether there is probable cause for an assertion, which it applied to that issue, is correct. However, Drushella argues that each of Fechtig's other 11 assignments lacked merit, and that ORS 197.830(14)(b) requires an award of attorney fees under those circumstances.[4] As Drushella understands the statute, it mandates an award of attorney fees against a nonprevailing party if *any* of the arguments that the party makes to LUBA is devoid of merit. Accordingly, Drushella contends that LUBA erred by construing the statute to mean that attorney fees are awardable only if *every*

---

[3] In the balance of this opinion, we will generally summarize the formulation that LUBA adopted and that we approve by the use of terms such as "meritless" and "devoid of merit." We emphasize, however, that neither those terms nor others that we might use should be regarded as anything other than a shorthand way of referring to the entire test, as stated by LUBA and approved here. We also emphasize that terms such as "meritless" are used in this opinion in their literal sense, *i.e.*, that the presentations to which they refer are lacking in any *arguable* support, as distinct from "simply" being incorrect.

[4] LUBA's disposition of Drushella's argument about the meaning of the statute made it unnecessary for it to address his contention that there was no merit to any or all of Fechtig's 11 other assignments. For the same reason, we find it unnecessary to reach that contention.

argument made by the party against whom they are sought is lacking in all merit.

The focus of the disagreement here is over the meaning of the term "a position" in ORS 197.830(14)(b). LUBA—and, apparently, Fechtig—understand it to refer to a party's stance in the appeal as a whole and to the tenability of the party's presentation, viewed in its entirety, in pursuing or defending the appeal to LUBA. Given that view, LUBA concluded that it has authority to assess attorney fees against a party under the statute only if *all* of its arguments are meritless and, therefore, lack probable cause within the meaning of ORS 197.830(14)(b). Drushella, on the other hand, understands the term "a position" to refer to each particular argument that the party makes in the appeal and, in effect, to be synonymous with "an argument." Given that view, Drushella asserts that attorney fees under ORS 197.830(14)(b) are recoverable against a party, if *any* of its arguments to LUBA is lacking in merit, even if the party makes other arguments that are meritorious. LUBA explained its conclusion:

> "Under the above-quoted language in *Contreras*, once this Board determines that 'any' of the issues raised in petitioner's appeal were supported by probable cause, an award of attorney fees is inappropriate, and our inquiry ends. *See also Squires v. City of Portland*, ____ Or LUBA ____ (LUBA No. 96-197. Order on Petition for Attorney Fees, April 28, 1997), slip op 4[, *aff'd* 149 Or App 436, 942 P2d 303 (1997)].

> "[Drushella] contends that because ORS 197.830(14)(b) authorizes an award of attorney fees against a party who presented a 'position' without probable cause to believe it was well-founded, if there is a *single* argument in petitioner's brief that is not supported by probable cause, that single argument provides a basis for attorney fee sanctions. Although [Drushella's] argument does have textual support in the legislature's use of the word 'position' in ORS 197.830(14)(b), we believe the context indicates that the legislature did not intend the result urged by [Drushella]. ORS 197.830(14)(b) is similar in language and purpose to ORS 19.160, which also deals with appeals that are taken to the appellate courts without probable cause.

> "* * * * *

"The unusual 'probable cause' standard of ORS 197.830-(14)(b), enacted in 1983, appears to have been borrowed from ORS 19.160. However, as we recognized in *Contreras*, the legislature gave ORS 197.830(14)(b) a broader application than ORS 19.160, in that its application is not restricted to petitioners who file appeals without probable cause. Rather, the legislature created a statute that would allow an award of fees against any *party* who 'presented a position' without probable cause. The term 'party' includes a local government or an intervenor whose defense of a local land use decision was not supported by probable cause. *Contreras*, slip op 6 [n 2]. The language of ORS 197.830-(14)(b), read as a whole, indicates that the inclusion of the phrase 'presented a position' was necessary to accomplish this result, and was not intended to require an award of attorney fees where any single assertion set forth in a petition for review is not supported by probable cause." (Emphasis in original; footnote omitted.)

LUBA concluded by noting that its approach was consistent with *Broyles* and with *Seely v. Hanson*, 317 Or 476, 483, 857 P2d 121 (1993), and *Westfall v. Rust International*, 314 Or 553, 559, 840 P2d 700 (1992), where, in applying other sanction or penal attorney fee provisions, the Supreme Court equated "meritless" and like terms with an absence of merit that pervades "every argument on appeal."

Drushella's principal argument to us is essentially the same as his principal contention to LUBA. He asserts, *inter alia*, that LUBA disregarded the "plain, natural and ordinary meaning" of various terms in ORS 197.830(14)(b), culminating in its mistaken reading of the words "a position" to "mean the same thing as 'an appeal,' " rather than "any argument" that a party makes in the course of an appeal to LUBA. According to Drushella, "[b]y no ordinary interpretation can the words 'a position' mean a combination of competing and alternative theories" that comprise the party's overall presentation in the appeal. Drushella relies on the maxim that the legislature's use of different words in statutes that are otherwise similar reflects an intended difference in meaning, and he argues that the difference between "position" in ORS 197.830(14)(b) and "appeal" as used in ORS 19.160 and other sanction and penal attorney fee statutes *must* be that "position" means something less than—and only

part of—the appeal as a whole. Hence, Drushella concludes, LUBA erred by equating the two terms and, consequently, by limiting the circumstances under which attorney fees or sanctions can be awarded in the same way that the Supreme Court has done in applying ORS 19.160 and other statutes or provisions that expressly apply to unmeritorious "appeals."

There are a number of difficulties with Drushella's argument. The threshold problem is that he completely disregards the possibility that the terms in question *could* mean something other than what he reads them to mean and, specifically, that they *can* be read in the way LUBA interpreted them. We do not share Drushella's assumption that the word "position" can only have the one "plain, natural and ordinary" meaning that Drushella gives it. On its face and, particularly, in the context of ORS 197.830(14)(b), the word could as plausibly be understood in the broad way that LUBA applied it as in the narrow way that Drushella thinks it must be read. To illustrate, as a matter of definition, it could mean, *inter alia*: "Fechtig's position is that the city's decision should be reversed because it is erroneous in one or more respects"; *or*, along with many other possible examples of the narrower meaning, "Fechtig's position is that the city misinterpreted the word 'or' as meaning 'on.' " *See, generally, Webster's Third New International Dictionary,* 1769 (1993).

Further, Drushella overlooks or misreads much of the critical analysis in LUBA's opinion. For example, LUBA did not say that "position" in ORS 197.830(14)(b) means the *same* thing as "appeal" in other statutes. Rather, the thrust of LUBA's reasoning is that the word "position" in this statute has a meaning *as broad* as the word "appeal" does in the other statutes, and that both terms, in their different contexts, refer to a party's presentation in its entirety, rather than to particular arguments within or components of its presentation. LUBA's opinion also explains its understanding of why the different words were used in that manner in the different provisions. As LUBA explained its understanding in the passage from its opinion last quoted, the word "position" is used instead of "appeal" in the statute in question here because, unlike provisions like ORS 19.160, ORS 197.830(14)(b) provides for the recovery of attorney fees against any nonprevailing party to the appeal, not just the

appellant and, *ipso facto*, it makes a meritless defensive presentation by those other parties sanctionable to the same extent as the appellant's act of presenting a totally meritless appeal. Therefore, LUBA concluded that the word "position" was used in ORS 197.830(14)(b) because it is a neutral term that encompasses the presentation of *any* party, while the word "appeal" as used in the context of ORS 19.160 and like provisions denotes only the appealing party's presentation.

Drushella's misreading of LUBA's opinion is demonstrated graphically by his statement that LUBA wrongly construed ORS 197.830(14)(b) "to mean that a prevailing party is entitled to an award of attorney fees only if the non-prevailing party is the appellant." As just discussed, LUBA said exactly the opposite, and it did so in connection with the focal issues of why the word "position" is used in the statute instead of "appeal" and what the word means in the statutory context. Nevertheless, although Drushella's arguments do not explain or particularize why he regards LUBA's interpretation of ORS 197.830(14)(b) to be wrong—or, for that matter, why he regards his own understanding of the statute to be right—there is no question about *what* his and LUBA's respective views of its meaning are. Accordingly, Drushella's presentation to us suffices to raise the general issue of whether LUBA erred in its interpretation or application of the statute here and in the resulting denial of his petition for attorney fees. We turn to that issue.

■ As we have indicated, at the textual level, the term "a position" is ambiguous. It could have either the broader or the narrower meaning described above.[5] However, as we said in *Steele v. Employment Department*, 143 Or App 105, 113, 923 P2d 1252, *rev allowed* 324 Or 487 (1996),

> "it does not follow from the fact that there are several variations of how a word is defined in the dictionary that all of the variations are pertinent whenever the word is used, or that each variation is an arguably plausible description of what the word means as it is used in a particular statute. The subject and purpose of the statute, together with the

---

[5] Given the fact that the statute refers to "*a* position," it is highly unlikely that it could be intended to mean anything in between the narrow or the broad extreme, *e.g.*, that more than half of the arguments are meritless.

statutory language that surrounds the word in question, narrow the array of definitional choices that dictionaries alone afford[.]"

Here, both views find equal support in the dictionary. We conclude, however, that LUBA's view of why the word "position" is used and what it means in ORS 197.830(14)(b) is more plausible than Drushella's. As mentioned above, under LUBA's understanding, "position" was chosen because it is a neutral term that covers the presentations of all parties, while the different words that appear in sanction statutes that are applicable only against appellants tend to be correspondingly more directed as to whom they reach. There is no question that ORS 197.830(14)(b) differs from the other statutes in the way indicated by LUBA; it expressly provides that attorney fees are potentially assessable "against any [nonprevailing] party," not just a losing appellant. There is also no question that the word "position," as distinct from words such as "appeal," facilitates the expression of that wider application. Thus, LUBA's interpretation of the term "position" is consistent with the surrounding text and one of the clear purposes of the statute. *See Steele*, 143 Or App at 113. By contrast, there is *no* reason, aside from the dictionary definitions themselves, to think that the legislature chose "position" rather than "appeal" for the alternative reason that Drushella hypothesizes, and the dictionary definitions themselves support the opposite meaning of "position" as much as they support the meaning on which Drushella's hypothesis depends. We conclude that, on balance, the text of the statute is more consistent with LUBA's interpretation than Drushella's argument.

■ We next consider the relevant context. Under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and its progeny, the "context" of a statute is as important as its text in the exercise of interpreting the statute. "Context" consists, *inter alia*, of other related statutory provisions. Further, the Supreme Court's statutory interpretations are considered to be part of the statutes themselves, subject only to subsequent legislative change, and are part of the context. *Jones v. General Motors Corp.*, 325 Or 404, 411, 939 P2d 608 (1997). The context of ORS 197.830(14)(b) includes other statutes that provide for sanctions or attorney

fees for unmeritorious presentations in litigative and/or appellate settings. *See Pfeifer v. City of Silverton*, 146 Or App 191, 195, 931 P2d 833 (1997). Nevertheless, as we will have occasion to reiterate later, some of the contextual sanctions statutes that we will discuss are more apposite to ORS 197.830(14)(b) than others and, therefore, more relevant to our interpretation of that statute.

Drushella appears to argue, with apparent reference to *Broyles*, *Westfall*, and *Seely*, that LUBA gave undue weight to the Supreme Court's interpretations of other statutes which, it concluded, allow sanctions or attorney fees to be imposed only where every argument on appeal is meritless. We agree with Drushella's suggestion, up to a point: the statutes or other provisions that were interpreted or applied in those cases used the word "appeal" (or analogs of it) in describing the meritless presentation that could serve as the basis or one of the bases for sanctions or attorney fees,[6] while the central point of Drushella's argument here is that the word "position" instead of "appeal" was used in ORS 197.830(14)(b) for the precise purpose of making attorney fees awardable if some part of the appeal rather than the whole appeal is devoid of merit. *But see Jones*, 325 Or at 414 (treating previous Supreme Court interpretations of ORCP 47 as "context" for the 1995 amendment to the rule that the

---

[6] Some of the provisions had additional or alternative criteria for sanctions, *e.g.*, subjective "bad faith," at least at the times of the Supreme Court's decisions. However, we are concerned here only with the aspect of them that relates to the meritlessness of a presentation, and with *what* must be meritless in order for sanctions to be imposed under them.

*Broyles* and *Westfall* deal, respectively, with ORS 19.160 (*see* note 2) and ORS 656.390 (sanctioning frivolous or bad faith appeals or motions for reconsideration to the appellate courts in workers' compensation cases). *Seely* deals primarily with ORCP 17; however, it deals with that rule in the context of an appeal to the appellate courts, and as made applicable to the appellate proceedings by ORAP 1.40 and ORAP 13.25(1). The word "appeal" appears in ORAP 13.25(1). *See* 317 Or at 483 n 10. We do not find the word in ORCP 17 itself as it read at the time *Seely* was decided.

We note that a number of the sanction and attorney fee provisions that we consider as context have undergone amendments, principally in 1995, since the cited cases construing them were decided. However, with one exception that is not pertinent to our analysis, the amendments do not change *what thing or things* must be meritless, frivolous or the like, in order for the sanctions or attorney fees to be imposed.

defendant asserted was intended to legislatively modify or overrule the previous case law).

Nonetheless, the other sanction and attorney fee provisions, including those that the court construed in *Broyles*, *Westfall* and *Seely*, are part of the context of the statute here. ORS 197.830(14)(b) is a section of a statute that relates generically to an appellate process, and the legislature has expressly analogized that process to judicial appeals. ORS 197.805 requires the review of land use decisions by LUBA and the courts to be conducted in accordance with "sound principles governing judicial review." As noted, the word "position," *facially*, could refer to a party's entire presentation in the appeal or to some lesser part of the presentation. Against that background, it is at least contextually instructive that no other statute or rule pertaining to sanctions for presentations in an appeal has ever been interpreted to apply to particular arguments in an appeal, and that the three provisions that the Supreme Court has considered in that connection have all been interpreted to apply to a party's entire presentation.

Because of the unique linguistic similarities between the two statutes and the corresponding likelihood that ORS 197.830(14)(b) was patterned after ORS 19.160, the latter is the single most relevant contextual guide to the meaning of the former. *See* n 2. The "damages" under ORS 19.160 are assessable for "taking [an] appeal" without probable cause. By its terms, and as interpreted in *Broyles*, the absence of merit that that statute penalizes relates to the appeal as a whole, and the sanctions for which it provides are not assessable if "any of the legal points asserted on appeal possessed legal merit." 295 Or at 801.

Similarly, ORS 656.390 provides for sanctions against a party who pursues frivolous reviews or appeals within the workers' compensation system or who files a frivolous appeal or motion for reconsideration to the appellate courts in a workers' compensation case. That statute, too, by its reasonably clear terms and as construed in *Westfall*, can be applied against a party only if all of its arguments on appeal are frivolous.

The import of the other sanction provisions that provide context for ORS 197.830(14)(b) is less clear-cut. ORS 20.105 provides for attorney fees against a party who, without an objectively reasonable basis, asserts "a claim, defense or ground for appeal or review." *See Mattiza v. Foster*, 311 Or 1, 803 P2d 723 (1990) (construing statute as to matters that are generally not germane to issues here). The term "*ground* for appeal" appears to connote something less than the party's entire presentation on appeal, (although, in *its* context, it is far from clear that it could connote something *as* specific as a particular supporting argument on appeal).

A final sanction provision that is contextually illustrative is ORCP 17. At the time that that rule was construed by the court in *Seely*, it provided for sanctions against an attorney or party who signed and thereby implicitly certified "a pleading, motion or other paper" that is not "well grounded" in fact or "warranted" in law to the best of the signatory's knowledge, and that is "interposed for any improper purpose." As earlier noted, the Supreme Court concluded in *Seely* that, in the context of an appeal to the appellate courts, "every argument" must be deficient in order for a party to qualify for sanctions under the "meritlessness" prong of ORCP 17. *See* n 6.

After the decision in *Seely*, ORCP 17 was amended by Oregon Laws 1995, chapter 618, section 4. Among other things, the amendment added a new paragraph C to the rule to particularize the types of acts that qualify as sanctionable certifications of a pleading, motion or other paper. We do not regard that 1995 amendment to ORCP 17 to be significant here—even as context. The pertinent language of ORS 197.830(14)(b) was enacted in 1983. Although both provisions were amended in 1995, the amendment to ORS 197.830 did nothing to define or redefine "position," in contrast to the extensive particularization that the amendment to ORCP 17 added to the definition of the pleadings, motions and other papers that are subject to that rule.

Aside from the other sanction and attorney fee provisions just discussed, we find only one additional statute that can *reasonably* be regarded as context for ORS 197.830(14)(b). ORS 197.805, the policy statement of the

LUBA appeal statutes, requires that decisions in matters involving land use "be made consistently with sound principles governing judicial review." The "chilling effect" that could follow from penalizing a party who presents *any* unmeritorious argument or arguments, but also makes one or more meritorious arguments in the same appeal, may well be contrary to those principles. *See Mattiza*, 311 Or at 8 n 11.

On balance, the context of ORS 197.830(14)(b) is more consistent with the conclusion that the legislature intended for attorney fees to be assessable against a party only if every argument in the entire presentation it makes to LUBA is lacking in probable cause (*i.e.*, merit). Indeed, when due weight is given to the contextual provisions that are most apposite to ORS 197.830(14)(b)—ORS 19.160 and ORS 656.390, both of which relate exclusively to appeals and/or other judicial or administrative review proceedings—the context, taken together with the text, is close to but probably not quite conclusive. Accordingly, we turn to the legislative history.

Drushella contends that the objective of the 1995 amendment to ORS 197.830(14)(b) was to increase the useability and use of the statute for the imposition of attorney fees. The legislative history to which Drushella points, like the text of the amendment itself, shows that the legislature went about achieving that objective in two discrete ways: by making LUBA's assessment of fees mandatory rather than discretionary when the conditions for their award exist, and by eliminating the preexisting subjective misfeasance condition for their award and replacing it with a test that is solely objective. Drushella notes that a witness before one of the legislative committees that considered the 1995 amendment touched on his understanding of the phrase "a position." However, even if that testimony were persuasive evidence of the 1995 legislature's own understanding of the term, it would be of minimal consequence: The term and its relevant surrounding context were enacted in 1983, and the 1995 legislation left them unchanged. Drushella does not address the 1983 legislative history.

Oregon Laws 1983, chapter 827 is an extensive Act, dealing with numerous land use matters. Among other

things, it was the Act that established LUBA as a permanent body, after the two previous legislatures had provided for its temporary or "sunsetted" existence. The Act originated in House Bill 2295, which was introduced at the request of Governor Atiyeh. The precursor of what is now ORS 197.830(14)(b) was part of the original bill, and read as first proposed:

> "(b) The panel [LUBA] may also award reasonable attorney fees and expenses to the prevailing party against any other party that the panel finds presented a position that was frivolous or offered in bad faith."

During the course of the hearings on the bill by the House Committee on Environment and Energy, the language was changed to read substantially as the enacted provision continued to read until the 1995 amendment.

The most salient indication of the intent of the House appears in the staff analysis that was prepared by the committee's administrator for its use at the last work session that it held before sending the bill to the floor with a "do pass" recommendation. The administrator explained that,

> "if [LUBA] finds that *an appeal was frivolous* and in bad faith, the prevailing party may be awarded attorneys fees and expenses by the panel. (See Section 31)."[7] (Emphasis supplied.)

The bill was passed by the House and the Senate, without further change to the relevant provision. The only reference to that provision that we find in the Senate proceedings was the following exchange between Senator Day and Gordon Fultz, a representative of the Association of Oregon Counties, at a hearing of the Committee on Energy and Environment:

> "SENATOR DAY: How did you get in the 'reasonable attorneys fees'? Did the Bar Association come in on that?
>
> "GORDON FULTZ: No, the major purpose of that was to try and stop frivolous appeals. It[']s to make sure that the appeals have justification. This would allow the land use

---

[7] The only other reference to the attorney fee provision that we find in the House proceedings appears in the testimony to the committee by a representative of 1000 Friends of Oregon. It is consistent with the summary in the staff analysis.

panel to award attorney fees where it felt there was a problem with unfounded petition, or one that is not offered in good faith but as a harassment procedure." HB 2295, May 23, 1983, Tape 137, Side A, 81-87.

The legislative history of this small and uncomplicated section in a large and complex bill is unsurprisingly sparse, but it is also uniform in its import. Although the word "position" rather than the word "appeal" was used in the provision from its inception, it appears that it was understood from the inception and throughout the legislative deliberations that "frivolous appeals" were its target.[8] Not only is the legislative history devoid of any indication that the word "position" was chosen instead of the word "appeal" to denote something narrower in scope or less entire than an appeal; it also contains no *express* recognition that "position" could even refer to anything *except* an appeal. The absence of any express mention by legislators or others involved in the process that "position" could encompass things in addition to the appealing party's presentation is neither particularly surprising nor significant. The likeliest explanation is that, when the provision that is being considered deals generally with penalties for meritless presentations in connection with the appeal of a decision, the challenge to the decision rather than its defense will more readily come to the minds of participants in the legislative process who are presenting a synopsis of the general effect of the provision.

Whatever else the legislative history may not tell us, however, the House Committee staff analysis and the testimony clearly do signify that the sanctionable events under ORS 197.830(14)(b) at least *include* appeals to LUBA and that, like the other statutes that sanction meritless appeals expressly and exclusively, the legislature understood the provision that it enacted in 1983 to authorize attorney fees if "an *appeal*" was frivolous—not *part* of an appeal.

---

[8] Like the term "probable cause," the word "frivolous" has historical associations with ORS 19.160. The 1983 Act was adopted before the Supreme Court decided *Broyles*. However, earlier decisions in which that court had applied ORS 19.160 used the word "frivolous" as a label for the appeals to which the statute pertained (although not necessarily as a construction of the terms of the statute). *See, e.g., Stirling v. Dari-Delite, Inc.*, 262 Or 359, 370, 491 P2d 1168, 494 P2d 252, 498 P2d 753 (1972).

In sum, the legislative history adds decisive support to the interpretation that is indicated by the text and context: attorney fees are recoverable under ORS 197.830(14)(b) only if the presentation of the nonprevailing party from whom they are sought is devoid of merit in its entirety; and, as LUBA surmised, the word "position" was used instead of the word "appeal" to denote the reciprocal application of the provision rather than something that is lesser in scope than a party's entire presentation in an appeal to LUBA.

Because we construe the statute to provide for attorney fees only if a party's entire presentation to LUBA is meritless, we agree with LUBA that Drushella was not entitled to recover attorney fees from Fechtig, even if his appeal lacked probable cause in all of its particulars except the ones that we earlier concluded were not without merit. *But see* n 4.

Drushella's other contentions do not warrant separate discussion.

Affirmed.