Argued and submitted November 3, 1997, affirmed January 7, 1998

# SPENCER CREEK NEIGHBORS,
Jane Novick and Jerry Strand,
*Petitioners,*

*v.*

# LANE COUNTY,
*Respondent.*

## (LUBA No. 96-079; CA A99385)

952 P2d 90

William Sherlock argued the cause for petitioners. With him on the brief were Bill Kloos and Johnson, Kloos & Sherton, PC.

Stephen L. Vorhes, Assistant County Counsel, argued the cause for respondent. With him on the brief were Teresa J. Wilson, County Counsel, and Lane County Office of Legal Counsel.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioners seek review of LUBA's denial of their petition to recover attorney fees from respondent Lane County pursuant to ORS 197.830(14)(b).[1] We disagree with part of LUBA's reasoning but agree with its disposition and affirm.

Petitioners appealed to LUBA from the county's approval of a "paintball park." They made two assignments of error. LUBA sustained petitioners' second assignment, concluding that the county governing body (board) erred in holding that petitioners Novick and Strand were not entitled to exercise certain participatory rights at the board hearing under the county's procedural regulations. Because LUBA's disposition of the second assignment of error necessitated a remand and the resulting possibility that the local "evidentiary record may be expanded by additional proceedings before the county," LUBA concluded that "it would be premature to address" petitioners' first assignment, in which they raised, *inter alia*, a substantial evidence challenge to the county's decision.

After LUBA made its decision on the merits, petitioners moved for attorney fees and expenses. As explained in LUBA's order on the attorney fee petition, petitioners asserted that they were entitled to attorney fees on the ground that the county's "position in response to petitioners' *second assignment of error*" lacked probable cause and was therefore sanctionable by an attorney fee award pursuant to ORS 197.830(14)(b) (emphasis supplied). Insofar as we are advised, the petition was not based on and made no assertion about the existence or absence of probable cause for the county's response to petitioners' other assignment of error, which LUBA had not reached in its decision on the merits. In any event, LUBA's disposition of the attorney fee issue was based

---

[1] That statute requires LUBA to

"award reasonable attorney fees and expenses to the prevailing party against any other party who [LUBA] finds presented a position without probable cause to believe the position was well-founded in law or on factually supported information."

solely on petitioners' contention that the county's response to one of the two assignments of error was lacking in all merit.

■       In *Fechtig v. City of Albany (A97764)*, 150 Or App 10, 946 P2d 280 (1997), decided after LUBA issued its order on the attorney fee petition in this case, we examined the text, context and legislative history of ORS 197.830(14)(b), and concluded that attorney fees could be assessed against a party to a LUBA appeal "only if every argument in the entire presentation it makes to LUBA is lacking in probable cause (*i.e.*, merit)." *Id.* at 24.[2] We also emphasized in *Fechtig* that that conclusion applies equally to the recoverability of "attorney fees against any nonprevailing party to the [LUBA] appeal, not just the appellant and, *ipso facto*, it makes a meritless defensive presentation by those other parties sanctionable to the same extent as the appellant's act of presenting a totally meritless appeal." *Id.* at 18-19. In all of those particulars, we reached the same conclusions that LUBA had in the *Fechtig* case itself and in various earlier decisions by LUBA where it had construed and applied ORS 197.830(14)(b).

As noted, LUBA's order on the petition for attorney fees in this case predated *our* decision in *Fechtig*. LUBA's order here summarized the holding in *its* decision in that case and found it to be distinguishable. LUBA explained:

> "However, the rule adopted in *Fechtig* does not readily apply to situations such as the one at hand, where a successful petitioner attempts to recover attorney fees from a local government. The positions presented by respondents (and intervenors-respondent) in a LUBA appeal are necessarily dependent upon the positions presented in the petition for review. Under the rule stated in *Fechtig*, a respondent would be able to avoid an award of attorney fees if *any one* of the petitioner's assignments of error were denied, regardless of the relative merits of that single assignment of error. We do not believe that a respondent should be allowed to avoid an award of attorney fees under ORS 197.830(14)(b) solely because petitioner is unable to prevail on every assignment of error raised in a petition for review.

---

[2] For purpose of the discussion here, it suffices to say that we said by way of summary that "terms such as 'meritless' " mean "that the presentations to which they refer are lacking in any *arguable* support, as distinct from 'simply' being incorrect." *Id.* at 15 n 3. (Emphasis in original.)

"Thus, we refine the rule adopted in *Fechtig* to hold that when considering a petition for attorney fees brought by a prevailing petitioner, we will analyze the merit of those arguments that are made by a respondent or an intervenor-respondent *in response to assignments of error that were sustained.*[3] Applying this approach to the standard set forth in [another earlier LUBA decision], we will make an award of attorney fees to a petitioner if we determine that no reasonable lawyer would conclude that any of the legal points asserted in response to arguments raised in assignments of error that were sustained by LUBA possessed legal merit. In making this determination, we will consider whether any of the issues raised in defense of a sustained assignment of error were open to doubt, or subject to rational, reasonable, or honest discussion. If not, an award of attorney fees against the local government will be required." (Emphasis in original.)

LUBA then proceeded to analyze petitioners' argument that the county's response to petitioners' second assignment was wholly lacking in merit. LUBA rejected the argument. It concluded that, despite its own disagreement with the merits of the county's defense, the county had "reasonably relied on [its governing body's] interpretation of its own rules for on-the-record hearings," and thereby cleared the "low threshold" that ORS 197.830(14)(b) establishes for the avoidance of the attorney fee sanction that it authorizes.

The central issue that the parties disputed before us and that we decided in *Fechtig* was whether ORS 197.830(14)(b) allows attorney fees to be assessed against a party if some, but not all, of its arguments in an appeal to LUBA lack probable cause, or whether the statute requires that all of the party's arguments be devoid of merit in order for the attorney fee sanction to be invoked against it. Based on the language, relevant context and history of the statute, we held that fees may be assessed only if all of a party's arguments lack merit.

LUBA's opinion in this case would have the effect of making that rule applicable when the party from whom the

---

[3] LUBA uses the terms "sustained" and "denied" to describe its disposition of the assignments of error that the appealing party makes to it.

attorney fees are sought is the appellant, but not when attorney fees are sought from a governmental body or other respondent. Nothing in the language of the statute permits such a distinction. By its terms, ORS 197.830(14)(b) refers to "any [nonprevailing] party" who has presented a wholly meritless position as a potential target for attorney fees. It does not differentiate in any way between parties on the basis of whether they are appellants or respondents before LUBA, or on any other basis except whether they prevailed or lost in the LUBA appeal. We stated in our *Fechtig* opinion—and noted that LUBA had also observed—that the apparent reason for the linguistic differences between ORS 197.830(14)(b) and ORS 19.160, on which it was modeled, was to make all nonprevailing parties, rather than appellants alone, potentially sanctionable "to the same extent." *Id.* at 19; *see also id.* at 27.

Moreover, the difference in the *way* LUBA's present opinion proposes to treat appellants and respondents would be quite anomalous. Although an appellant would still be subject to attorney fees only if every assignment and argument in its appeal is lacking in probable cause, attorney fees potentially could be awarded against a respondent based solely on the meritlessness of its arguments opposing the appellant's assignments that LUBA sustains, regardless of whether the respondent has made meritorious or even "winning" arguments in opposition to the appellant's assignments that LUBA rejects or does not reach. LUBA's distinction would potentially place respondents in exactly the position that *Fechtig* holds ORS 197.830(14)(b) was not intended to place any party. Under LUBA's formulation, attorney fees could be awarded against a respondent if it made a *single* meritless argument, if that argument happened to be in response to the single assignment on which the appellant prevailed, even though all of the *appellant's* other assignments and arguments might be meritless or be unsuccessful for the very reason that the respondent made meritorious and convincing arguments against them. In sum, LUBA's approach would subject respondents who make *some* unmeritorious as well as some meritorious arguments to possible attorney fee awards, when appellants cannot be similarly sanctioned unless *all* of their arguments are meritless;

indeed, the odds of such an award against a respondent would *increase* in direct proportion to the number of assignments on which the respondent prevails and the appellant loses, because the sample of unsuccessful responses in which merit might be found would be correspondingly reduced.

In their oral argument to us, petitioners suggested that there is a practical need for LUBA's approach, or some variation of it. Otherwise, according to petitioners, in cases like this, where LUBA's disposition of one assignment makes it unnecessary for it to reach the second, it would be impossible for the prevailing appellant to seek attorney fees under the *Fechtig* standard, because there would have been no resolution of the other assignment or of whether the respondent's argument concerning it was supported by probable cause. Even assuming that petitioners' point could have some bearing on the meaning or application of ORS 197.830(14)(b) if its premise were correct, we do not think it is correct. Nothing of which we are aware requires that an assignment of error must have been decided in LUBA's decision on the merits in order for the prevailing party to assert later in a timely petition for attorney fees that the other party's position on the assignment was lacking in probable cause.[4]

Insofar as LUBA's analysis in the present case is inconsistent with our opinion in *Fechtig*, we disagree with LUBA's reasoning. However, notwithstanding the *reasons* why LUBA reached the question of whether the county's response to petitioners' second assignment lacked probable cause, its *doing* so was not error. If there was probable cause for the county's argument in response to that assignment, then, regardless of any other issues, the county could not be subject to an attorney fee award under the statutory test

---

[4] By noting the likely availability of such a procedure, we do not wish to be understood as affirmatively endorsing its use. There is a certain tail-wagging-the-dog quality to petitioners' implicit suggestion that the decision of the merits of a case needs to be tailored to enable the prevailing party to bring itself within a statute that provides for sanctions against the other. The *overriding* purpose of the adjudicative process is to resolve controversies, not to provide a forum for the resolution of extraneous questions that bear only on whether one party is entitled to extraordinary remedies against the other in connection with the litigation process itself.

described in *Fechtig*. We also agree with LUBA that the county's argument was meritorious enough to pass the probable cause test under the statute and *Fechtig*.

Petitioners make only one argument in support of their assignment that LUBA erred in holding that there was probable cause for the county's position. They note initially that LUBA's decision *on the merits of the appeal* amounted to a reversal of the county governing body's interpretation of certain county land use legislation. Petitioners then point out that, for such a local interpretation to be reversible under ORS 197.829(1) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), the interpretation must be "clearly wrong." *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992).[5] Petitioners continue that the "without probable cause" test that ORS 197.830(14)(b) establishes for an award of attorney fees against a party to a LUBA appeal is comparable to the "clearly wrong" test in its leniency to the party against whom it is asserted and that, having failed the "clearly wrong" test, the county also necessarily fails the "without probable cause" test. As petitioners summarize their position:

> "LUBA sidestepped analyzing the obvious linkage between the standards in the attorney fees and local deference statutes. Based on the language of the statutes and the [interpretive] case law, petitioners believe the linkage is clear."

The only similarity between the two tests that petitioners identify is that they are both stringent ones for the party invoking them and, correspondingly, both standards tend to create a low threshold for the party seeking to defend under them. However, the two tests relate to entirely different things. Here, for example, the "clearly wrong" test

---

[5] Petitioners also rely on *deBardelaben v. Tillamook County*, 142 Or App 319, 922 P2d 683 (1996), and *Zippel v. Josephine County*, 128 Or App 458, 876 P2d 854, *rev den* 320 Or 272 (1994), where we used phrases other than "clearly wrong" to synopsize the test. We explained in *deBardelaben* that our alternative phrasing in *Zippel* and, inferentially, in *deBardelaben* itself, was simply "the equivalent [of the clearly wrong] test" that we stated "in a different way[.]" 142 Or App at 324. Petitioners are correct in describing the test, however phrased, as a "highly deferential review standard."

applied to the county's position on the merits in the underlying appeal to LUBA and to the reversibility of the ordinance interpretation that it made *as a decisionmaker*. Conversely, the "probable cause" test does not apply simply to whether the county's interpretation was reversible on the merits but to whether its defense of the interpretation *as a litigant* was so untenable that a reasonable litigant could not have advanced it. *See, generally, Fechtig*, 150 Or App at 13-15.

Petitioners' argument blurs the two distinct functions and the two distinct tests. A county or other respondent defending the county's decision as a litigant does not *make* an interpretation; it performs an after-the-fact evaluation and, if possible, defense of the interpretation that the county governing body has made. The "clearly wrong" test applies to the governing body's interpretation and to the *disposition* of the respondent's defense of the interpretation. As a general proposition, however, the question of whether there is probable cause for a defense under ORS 197.830(14)(b) does not depend on a successful result but on whether it presents a "debatable" question "over which * * * reasonable * * * discussion may arise." *Fechtig*, 150 Or App at 14 (*quoting Broyles v. Estate of Brown*, 295 Or 795, 800-01, 671 P2d 94 (1983)).

Petitioners maintain that that general rule does not apply when an interpretation fails the "clearly wrong" test, and that that disposition necessarily means that the respondent's defense of the interpretation lacks probable cause. Petitioners' premise is that, in order to be reversible under the "clearly wrong" test, the interpretation must be so wanting that *no* argument in its support by a respondent can be tenable. As noted, however, *Broyles* and *Fechtig* both make clear that the fact that an argument is rejected on its merits does not mean *ipso facto* that there was not "probable cause" for its assertion. We are not persuaded that there is any basis for not applying that principle or for applying it differently depending on the nature of the legal standard that the argument must satisfy. We do not agree with petitioners that an argument is *necessarily* completely meritless and untenable, simply because it did not meet with success and the applicable standard is one that tends to be favorable to parties in the position of the one offering the argument. In situations of

that kind, as in most others, there is no inherent and invariable reason why an argument cannot rise to the level of the "debatable" and still fall short of prevailing. In other words, an argument in defense of an interpretation can be reasonably debatable, even if the interpretation itself is "clearly wrong."

Although there no doubt can be circumstances where a local interpretation is so obviously destitute that a reasonable lawyer could not attempt to defend it even under the "clearly wrong" test, petitioners do not argue that there is anything particular about the interpretation here that brings it within that category. Rather, petitioners simply present a *per se* argument that there can *never* be "probable cause" under ORS 197.830(14)(b) for the defense of an interpretation that LUBA holds to be "clearly wrong" on its merits. Petitioners are incorrect on that point, and they provide no other basis for concluding that LUBA erred in finding that there was probable cause for the county's argument. Accordingly, LUBA was also correct in its holding that petitioners are not entitled to attorney fees under ORS 197.830(14)(b).

Affirmed.